MARGERY H. SMULLIN ET AL., APPELLANTS, V. IDA M. WHARTON ET AL., APPELLEES.*

FILED APRIL 19, 1905.   No. 13,509.

1. **Wills: Bequests: Trusts.** Where a person, knowing that a testator with whom he has confidential relations in leaving him a devise or bequest intends it to be applied for the benefit of another, either expressly promises or by his action at the time implies that he will carry the testator's intention into effect, and the property is left to him with the faith on the part of the testator that his promises will be kept, he will be held as trustee.

2. **Equity.** In such case the will has full effect by passing an absolute legacy to the legatee, but equity, in order to defeat fraud, raises a trust in favor of those intended to be benefited by the testator, and compels the legatee as a trustee *ex maleficio* to turn over the gift to them. The court acts not upon an express trust created by the testator but, on account of the fraud, upon the conscience of the devisee.

3. **Elements of Trust.** A trust must be reasonably certain in its terms as to the property embraced in the trust, the beneficiaries, the nature of the estate they are to have, and the manner in which the trust is to be executed, and when any of these elements is indefinite or uncertain the trust must fail.

4. ———. Whenever the objects of the supposed recommendatory trust are not certain or definite, whenever the property to which it is to attach is not certain or definite, whenever a clear discretion or choice to act or not to act is given, and whenever the prior dispositions of the property import absolute and uncontrollable ownership, words of recommendation or request will not create a trust.

5. ———. Unless the property upon which the trust is to operate can be ascertained with reasonable certainty, an express trust will fail, and so of a constructive trust, whose extent and limits are the same as the express trust which it was attempted to create. Whether express or constructive, the same certainty as to the property is necessary.

6. **Case Distinguished.** *Little v. Giles*, 25 Neb. 313, distinguished.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE.  *Affirmed.*

* Rehearings allowed.  See opinions, pp. 690, 705, *post.*
  Rehearing denied.  See opinion, p. 710.

*John C. Cowin, V. O. Strickler* and *James H. McIntosh,* for appellants.

*W. W. Morsman, contra.*

LETTON, C.

This action was originally brought in the district court for Douglas county by Margery H. Smullin and others, appellants, as plaintiffs, against Ida M. Wharton and John C. Wharton, appellees, as defendants. George H. Boggs of the city of Omaha died on the first day of June, 1895, leaving his widow, the defendant Ida M. Boggs, now Ida M. Wharton, surviving him and leaving no children. On the 16th day of May, 1895, about two weeks before his death, he executed a will by which he left all his personal estate, the home property and a lot in the city of Omaha to his wife absolutely, and devised all the residue of his real estate in trust to Harry A. Westerfield, to pay the income to his wife during her life and to distribute what was left in the trust at her death among his brothers and sisters, and the surviving children of any deceased brother or sister. This will was duly offered for probate, whereupon the surviving brothers and sisters and the children of a deceased sister of the deceased instituted contest proceedings upon the ground of undue influence. These proceedings were finally brought to this court, and an opinion rendered therein (*Boggs v. Boggs,* 62 Neb. 274) affirming the decision of the district court, and of the county court, admitting the will to probate. After the termination of the proceedings establishing the will, this action was begun by the surviving brothers and sisters and the children of a deceased sister of George H. Boggs to declare a trust in the property for their benefit. The allegations of the petition, in substance, being that their brother George H. Boggs died leaving a will as set forth; that at the time of his death Boggs was 55 years old, his wife a few years younger, and that the plaintiffs, his brothers and sisters,

were older than he and in comparatively reduced circum-
stances; that the parents of Mrs. Boggs were well to do;
that Boggs and his wife had no children and that it was
Boggs' intention that his wife's family should not have
any of his property, but that it should all go to his
brothers and sisters, except what his wife needed for her
support; that he further intended at the end of each year
that the net revenue of the estate, after deducting the liv-
ing expenses of his widow, should be divided among the
plaintiffs, and that his wife should make a will leaving
all the property to plaintiffs at her death; that his wife
at the time of the making of the will was fully advised of
these intentions, and that she then before the will was
executed gave him her solemn promise and undertaking
that she would carry out his wishes, and accepted said
trust; that he believed said promises of his wife, had full
faith and confidence that she would execute the trust;
that he relied upon said promises in signing the will; that
shortly after the execution of the will he transferred to his
wife part of his property to avoid the trouble and expense
of probate, but at the same time subject to her agreement
about it; that the defendant, Ida M. Wharton, has wrong-
fully and fraudulently repudiated her said agreement, has
refused to perform the same and denies the plaintiffs'
rights.

The answer sets up two defenses; the first defense con-
sisting of affirmative averments setting up the transfer of
real and personal property made after the execution of
the will and before the testator's death; specific denials
of the allegations of the petition whereby a trust is sought
to be raised; an admission that the testator requested Mrs.
Wharton to help his brothers and sisters from time to time
according to her own judgment and discretion, as they
had done during the testator's lifetime, provided the
brothers and sisters should not make her any trouble by
contesting the will, which she promised to do; averments
that all the provisions for his wife's benefit in the will and
all the transfers made *inter vivos* were intended to be ab-

solute and unconditional, and a plea that the alleged promises being wholly in parol are void under the statute of frauds. The second defense pleads the proceedings in the contest over the property of the will; that the plaintiffs herein introduced evidence for the purpose of proving the alleged promises on the part of the defendant, Ida M. Wharton, to the testator set forth in the petition in this suit, and that the final judgment in said cause probated, allowed and established the said will as the last will and testament of the deceased George H. Boggs. The reply was a general denial to the first defense, and to the second defense it alleged that the supreme court found that the defendant, Ida M. Wharton, took the property upon the trust alleged in the petition herein. The cause was tried to the district court for Douglas county and judgment rendered against the plaintiffs in favor of the defendants.

The record in this case is very extensive, but upon the most essential facts there is very little controversy between the witnesses. A full statement of the facts as to the conditions and circumstances and the relations between George H. Boggs, his wife, the defendant herein, and the plaintiffs is contained in the lucid opinion in the will case (*Boggs v. Boggs, supra*), to which reference is made. It is necessary, however, in the case at bar to examine and carefully weigh all of the testimony bearing upon the question of the creation of the alleged constructive trust, and further, to examine the law as laid down by the courts of England and this country for the purpose of evolving the proper principles to be applied to the facts as we believe them to be established by the testimony. In this connection it may be well to note that under a recent statute the trial in this court is a trial *de novo*. The conclusion which this court may come to from the testimony in the case is not controlled by the inferences drawn by the district court as to the facts.

The transaction from which appellants assert that the constructive trust for their benefit takes its inception took place upon the 16th day of May, 1895, at the time of the

execution of the will of that date.  It appears that after Mr. Boggs returned from Chicago, about the first of May, when he was seriously ill, he had spoken to his confidential secretary, Mr. Westerfield, about changing his will, and on the 16th day of May he gave Westerfield specific directions to send Mr. Connell, his attorney, to him for the purpose of seeing about his will.  Connell saw Mr. Boggs, received instructions about a change in the will, and returned to the residence of Mr. Boggs in the evening with the will prepared for signature.  Mr. Connell went to Mr. Boggs' room and in the presence of Harry A. Westerfield read the new will to him.  Westerfield testifies that when he came to the reading of the trust provision, Mr. Boggs asked if that could not be changed, and that Mr. Connell said he thought that expressed his wishes about as well as they could be expressed in any other way.  After the will was read Mr. Boggs suggested that Mrs. Boggs be sent for. She was called into the room and Mr. Connell then read the will to her.  After it had been read to her, Mr. Boggs asked his wife how that suited her, and she said that it pleased her, that whatever pleased him pleased her.  He then stated that he had placed her in circumstances so that she could never want for anything.  So far there is no dispute among the witnesses as to what occurred.  But from this point the witnesses differ somewhat in their testimony.

Westerfield testifies that "he went on and stated that he had placed her in circumstances so that she would never want for anything.  He wanted her to live—continue to live—as they were living; have all the money she needed, and keep up the house and everything just the same, and then he said: 'At the end of every year I want you to divide the surplus among my people.'  And she said: 'All right, whatever pleases you pleases me, I will carry out your wishes.'  And then he told her that her people were in good circumstances to take care of themselves, but his people were all poor, and that he wanted her to make her will so that at her death the entire estate would go to his

brothers. and sisters. He said: 'If you want to give—
then if you want to give something to charitable purposes,
say five or ten thousand dollars, that is all right, but I
want the bulk of my estate, my entire estate, to go to my
brothers and sisters.' And she said: 'All right, what-
ever pleases you pleases me.' Then he said: 'I want that
done now.' Mr. Connell said to him:, 'Whatever you give
to Mrs. Boggs you want to give it to her out and out, you
do not want to give her anything with a string tied to it.'
He says: 'I know Mrs. Boggs, and she is disposed to do
the fair thing, and I know that she will carry out your
wishes.' Q. Well, just state when the will was signed
with reference to the conversation? A. Right there. The
will was signed then. Q. Just after? A. After Connell
said this to her. Q. That you have just stated? A. Yes,
sir, it was dropped there. The conversation was dropped
and they helped him up. He was lying on the couch and
he sat at the table and signed the will. Dr. Knode was
called in, after the will was signed Dr. Knode left. After
Dr. Knode left Mrs. Boggs called to Mr. Boggs and asked
him what she would do in case the will was contested. He
was lying on the couch at the time. He said: 'Why, there
will be no contest.' 'But,' she says, 'suppose there is a
contest, what shall I do?' He said: 'There will be none.'
She says: 'Suppose there is a contest?' 'Well,' he says,
'then fight it.'"

Mr. Connell, after relating the circumstances up to the
same point as to where Westerfield's testimony is quoted,
substantially to the same effect, says that Mr. Boggs said
to her: "Now, I have had Mr. Connell prepare this will,
so that you will have everything you want, and I want you
to live just as we have been living before this, and I want
you to have everything you desire, and the will has been
drawn by Mr. Connell for that purpose." And he said:
"You know that my people are poor and your people are
well to do, and I would like to have you, if you have any
surplus, to help my people." And she said: "Anything
you wish, George, I will do." He corroborates Westerfield

as to Mr. Boggs expressing the wish that he would like to have her help them out of any surplus she might have, but does not remember that she was to do this annually or at any stated time.  But he does not deny specifically Westterfield's testimony.

Mrs. Wharton, formerly Mrs. Boggs, admits she told Mr. Boggs she would carry out his wishes; denies that anything was said as to an annual division of surplus or about her making a will in favor of plaintiffs, and says she agreed to help his relatives if they did not make her any trouble, but nothing was said as to the extent she was to help them.  This is the substance of the direct testimony as to what occurred at the time the will was signed, except that one Millie Novotny, a domestic servant, testified that she was in the hall at the time of this transaction, and she relates at length a conversation substantially the same as that testified to by Westerfield.  It appears from Mrs. Wharton's testimony that Millie told her the next morning that she had heard every word of the will read, and from other circumstances we believe she actually did overhear a part of the conversation, but her testimony is so interwoven with improbable and imaginary circumstances that we deem it inadvisable to give it any weight in attempting to ascertain what conversation actually took place in the room.  There is indirect testimony however which corroborates Westerfield.

On the morning of the next day after the will was signed Mr. Hill who had been Mr. Boggs' partner for many years called upon him.  He says Mr. Boggs told him "he was not feeling very well, and he says: 'I have made a will,' and he says: 'My wife has agreed that after she has everything she wants, and lived just as we have been living, at the end of the year that she would divide the surplus among my people.'  This is about all of the talk."  "He went on to say that his wife was going to carry it out, and would divide with his people at the end of the year."

Mrs. Drake, another sister, says Mrs. Boggs told her about ten days before Mr. Boggs died that it was all fixed;

that everything was left to her, and that she was to pay taxes, keep up expenses just as George would do, and at the end of every year divide what is left over with the brothers and sisters; that Mr. Connell had said: "Mrs. Boggs, this is all left to your honor," and she had replied: "Yes, and it shall be just as Mr. Boggs wishes."

John W. Boggs, a brother, testifies that a few weeks after George died he called on Mrs. Boggs and that she said: "Now, the property business is all settled, just as George said it was. I am to make my will, and agree to make my will, and will this property to you folks at my death, the property that is in trust—that was put into Harry Westerfield's hands; it was put in his hands to take care of, but she had control of it all, she claimed; and said that George first wanted to turn that property over to us at this time; that immediately after his death he wanted us to have it, but she thought that it ought to go to us through her— the same talk about that we had before, that it would go to us through her. She said that he had given her the house and lot, and that house back of the high school, and all the personal property amounting to about $75,000, somewhere along there, and that was for her to live on, but she still went further and stated that if anything happened, or she became unfortunate or anything, or lost her property, she could sell a piece of this other property, if she needed it, to apply to her own use." He says she further said she had promised to divide the surplus each year.

Mrs. Wharton's attention was called specifically to each one of the incidents narrated by the witnesses Mrs. Drake and John W. Boggs in which they testified to statements or declarations made by her with reference to the disposition of the property, and she denies making any such admissions or statements as are ascribed to her in regard to the property as these witnesses testify to.

After a careful reading of all the evidence, we have come to the conclusion that the transaction actually occurred as testified to by the witness Harry A. Westerfield. His testimony is strongly corroborated by that of Mr. Connell

who was placed upon the stand by the defendant, and is further borne out by the testimony of Mr. Hill, John W. Boggs and Mrs. Drake. The probability of its being true is further enhanced by a consideration of all the circumstances and relationships of the parties. We are impressed with the fact that Mr. Boggs had a strong affection for his father's family. When he attained a comfortable position in life he thought of them and of their needs. In his will of November, 1885, he gave his father, who was then alive, $2,000 and divided the remainder of his property equally between his wife and his brothers and sisters. By the will of 1893, the undivided half of his real estate, in addition to the homestead, was left absolutely and unconditionally to his wife, and the residue of the estate was given to Harry A. Westerfield, as trustee, for the use of his wife during her life, and at her death whatever of the estate was remaining in the trust should go to his brothers and sisters. By the will of 1895, a lot in Omaha was added to the real estate devised in 1893 to the wife, and the whole of the remaining real estate, in place of half of it, was placed in trust with Westerfield. Before the panic of 1893 his property is estimated to have been worth about $395,000, but in the crash which came he had seen his assets shrink and diminsh in value nearly $150,000, since in 1895 they are estimated to have been worth about $250,000. In the wills of 1893 and 1895 his first care was to provide for his wife. He desired that his death should make no difference whatever in her manner of living; that she should live as well and be surrounded with as many luxuries as when he was alive. But in 1895, having had such an object lesson in the uncertainty of the value of investments, he evidently wished that she should have full, undisputed and exclusive control over all of his estate, so that even if it became necessary to sell a part of the property in order to maintain her in the style to which she had been accustomed she should have the power and right to direct the sale. This end was attained by giving her the absolute power of disposition during her lifetime

over all the property.  At the same time, however, his
brothers and sisters being older than himself and poor,
while her relatives were well to do, he desired that any
surplus which might remain after his wife had all the com-
forts and luxuries to which she was accustomed, and after
she had all the income she desired to gratify her wishes,
should go to his brothers and sisters.  Though the will ap-
parently increased the provisions for the benefit of his
brothers and sisters, yet, since the youngest of them was
ten years older than she, if they received nothing until
after her death in the usual course of human events they
would never share in his bounty.  And in this fact we see
the moving cause of his request to her to divide her sur-
plus revenue with them.

The legal question presented is whether or not the re-
quests made by George H. Boggs and the promises made
by his wife at the time of execution of the will and before
it was signed, together with her refusal to perform her
agreement, constitute her a trustee *ex maleficio* for the
benefit of the plaintiffs.

We have been favored with able arguments at the bar
and with exhaustive printed briefs upon the legal ques-
tions presented.  The position taken by the appellants in
brief is that under the rules of equity, in such a case as
this, the court will compel the wife to keep faith with her
husband by constituting her a trustee for the benefit of the
interested parties; that whether Mrs. Boggs when she
gave her assent intended a fraud or not is immaterial, her
refusal to carry out the trust having the effect of consum-
mating a fraud; that the court will presume Mr. Boggs
would not have made his will as he did if his wife had
stated she would not carry out his wishes; that the re-
lations between husband and wife are confidential; that
Mr. Bogg's confidence was betrayed, and that the fraud
gives rise to a constructive trust.

The appellees on the other hand maintain that before a
constructive trust can be impressed upon the property the
donee must have procured the gift to himself by fraud,

and not even then, unless the testator would, but for such fraud, have made the gift to the person alleging the fraud, nor even then, unless the evidence be clear, unequivocal and convincing. And that the trust sought to be established is void under the statutes of frauds and of wills.

We are convinced that Mrs. Boggs at the time she made the agreement with her husband to pay the surplus income each year to his brothers and sisters, and to make a will whereby his estate should go to them at her death, rather than to her own relatives, fully intended to carry out his wishes. While the relations during her husband's lifetime between herself and his family were not very close, still when her dying husband requested her to care for his aged relatives she willingly assented. Even at that season, however, she anticipated trouble and asked her husband what she was to do if they should contest the will. They did contest the will, and by their actions renewed and added to a feeling of hostility which apparently had formerly existed. The good will which was manifested by Mrs. Boggs to them at the time of and soon after her husband's death was changed to animosity, and under the influence of these feelings she has refused to carry out her husband's wishes. An important question which arises, however, in this connection is whether or not but for her promises to him he would have executed the will in the form that it was executed. Unless the will was signed by the testator in the form that it was because he relied upon his wife's promise to carry out his wishes, and unless we come to the conclusion that if she had not so promised, the will would not have been executed in the form that it actually was executed, no constructive trust would rise. It is important to notice in this connection that before the will was signed Mrs. Boggs was called into the room, his wishes were clearly stated to her, she promised to carry them out, and not until after the promise was made was the will signed. Had she stated then that she refused to carry out his wishes, one cannot doubt that other provisions guarding and preserving the interests of his

brothers and sisters would have been inserted in the will itself.

Cases of like nature to this have been before the courts for many years. The uniform rule in England has been that where a person, knowing that a testator in giving him a devise or bequest intends it to be applied for the benefit of another, either expressly promises or by his action at the time implies that he will carry the testator's intention into effect, and the property if left to him with the faith on the part of the testator that his promises will be kept, he will be held as a trustee. The court will not allow him to set up the statute of frauds or the statute of wills as a defense, for the reason that by his conduct he induced the testator to leave him the property. The court does not violate the statute, but for the prevention of fraud impresses a trust upon the gift in the hands of the devisee in order to prevent fraud. The will is not interfered with, the property passes by it, but equity acts, not because of the trust declared by the testator, but because of the fraud of the devisee. The court acts not upon an express trust created by the testator, but, on account of the fraud, upon the conscience of the devisee.

In *Sellack v. Harris*, 5 Vin. Abr. 521, a father purchased land. When on his deathbed he sent for his eldest son and told him these lands were purchased with his second son's money and that he intended to give them to him, whereupon the eldest son promised that he should enjoy them accordingly. The lord chancellor held that because of the fraud, in that the eldest son promised the father on his deathbed, the case was taken out of the statute of frauds.

In *Segrave v. Kirwan*, Beat. (Irish) 157, where an attorney who drew a will whereby he was appointed executor did not inform the testator of the rule of law that the personal estate undisposed of by will belonged to the executor, and where the defendant testified he was not aware of the legal effect of his appointment, the lord chancellor said that no fraudulent imposition had been

proved, and no imputation on defendant's personal character can result from the decree; yet that under the circumstances a court of equity will not permit him to retain the residue of the estate for his own benefit, and that he must be made a trustee of it for the next of kin. It was argued in that case as in the one at bar that to grant the relief prayed would in fact set aside the will, and that the ecclesiastical court has sole jurisdiction, and it was said by the court: "The will still remains operative in all its legal effects as established by the ecclesiastical court, but the court of equity controls it according to rules of conscience. The law of the court in this respect is not confined to implication arising on the face of the will. It extends to all cases wherein fraud or other circumstances peculiarly cognizable in equity occur."

In *Marriot v. Marriot,* 1 Strange (Eng.) 666, counsel contended that the probate of the will was conclusive evidence, and that a court of equity could not look into the disposition of the estate, but the court said: "A court of equity must consider what is the real will of the testator, and they cannot declare a trust according to their own fancy, nor according to what the testator should have willed, for then they make the will, and not the testator. But they may, to answer the real intention of the testator, declare a trust upon such will, though it be not contained in the will itself, which is in these three cases: (1) In that of fraud upon a legatary before mentioned. (2) Where the words imply a trust for the relations, as in the case of a specific devise to executors, and no disposition of the residuum. (3) In the case of the legatee promising the testator to stand as a trustee for another. And nobody has thought that declaring a trust in any of those cases is an infringement of the ecclesiastical jurisdiction."

In *Devenish v. Baines,* Finch, Ch. Prec. 3, a copyholder by his will intending to give the greatest part of his estate to his godson and the other part to his wife, the wife persuades him to nominate her to the whole and that she would give the godson the part designed for him.

Decreed against the wife notwithstanding the statute of frauds.

In *Barrow v. Greenough*, 3 Ves. (Eng.) 151, the testator requested the defendant, who was one of his executors and the person to whom the residuary estate finally was to come, to pay to his sister, Ellen Barrow, an amount greater than left to her in the will, which he promised should be done, though at the same time asking the testator to have a new will made inserting this provision. This the testator refused to do, saying he would leave the same to the defendant's generosity. The defendant's counsel insisted that this was contrary to the statute of frauds, and that it was left to defendant's discretion as to payment. The master of the rolls said: "I will not criticise upon words; nor do I think the word 'generosity' can be construed to take away the effect of a solemn desire of the testator coupled with the promise of the defendant. The defendant had no intention of fraud at that time, for he desired the testator to make a new will. * * * The question is, whether by reposing that trust in the defendant the testator was not prevented from making a new will. The defendant ought to have told him, that if he did not put it in his will, he would not do it, instead of that he promised to do it; upon which the testator refuses to make a new will, and says, he leaves it to his generosity, that is, he leaves it to his conscience. * * * The question is, whether the confidence, that the defendant would perform the trust he undertook, did not prevent the testator from making a new will." See also *Chamberlain v. Agar*, 2 Ves. & Bea. (Eng.) 259; *Mestaer v. Gillespie*, 11 Ves. (Eng.) 638, note.

The same rule has been well expressed in this country in *Trustees of Amherst College v. Ritch*, 151 N. Y. 282, 324, as follows: "The trust does not act directly upon the will by modifying the gift, for the law requires wills to be wholly in writing, but it acts upon the gift itself as it reaches the possession of the legatee, or as soon as he is entitled to receive it. The theory is that the will has

full effect by passing an absolute legacy to the legatee, and that then equity, in order to defeat fraud, raises a trust in favor of those intended to be benefited by the testator, and compels the legatee, as a trustee *ex maleficio,* to turn over the gift to them.   *   *   *   Neither the statute of frauds nor the statute of wills applies, because the will takes effect as written and proved, but to promote justice and prevent wrong the courts compel the legatee to dispose of his gift in accordance with equity and good conscience."

Nearly all the cases upon this subject have been collected in the opinion of the supreme court of Indiana in *Ransdel v. Moore,* 153 Ind. 393, 53 L. R. A. 753. We can add nothing to the able and exhaustive discussion of this question by that court. The Indiana court has examined, and cites in the opinion, not only the majority of the English cases upon the question, but almost every American case, among them being nearly all the cases cited in the briefs or in the argument of the case at bar, and draws the conclusion that the act of the husband in that case preventing the wife from making the will, and in promising to act as trustee, though there was no actual fraud, and the promise was in parol, made him a trustee for the brothers notwithstanding the statute of frauds.

Section 4 (chapter 32, Compiled Statutes, 1903; Ann. St. 5953) of our statute of frauds provides that the preceding section, which prohibits the creation of any trust over lands except by a deed in writing, shall not be construed to prevent any trust from arising or being extinguished by implication or operation of law. This section removes the transaction under consideration from the operation of the statute, because such trusts arose by operation of law before the statute of frauds was ever enacted. Nor, under the rule long ago laid down by the English courts, and followed by the courts of this country, does the statute of wills prevent the raising of this trust by the operation of the chancery powers of the court upon the conscience of the devisee. The section is only

declaratory of the rule which had long existed independ-
ently of any statute.

We conclude, therefore, that by the promise made by
Mrs. Boggs to her husband at the time of the execution of
the will, relied upon by him in signing that instrument,
and her refusal to carry out her promise, she thereby be-
came a trustee *ex maleficio,* if the trust was definite and
certain enough to be capable of enforcement. Though no
fraud was intended by her at the time, yet by the cir-
cumstances of confidence and trust arising from the mar-
riage relation, her husband trusted her and relied upon
her to carry out his wishes; and her refusal to do so after
her promise and after the property was vested in her was
such a fraud as will make her, in equity, a trustee, if a
trust was created by the language used by Mr. Boggs.
In other words, we conclude that the plaintiffs are en-
titled to be treated in relation to the estate as if the words
used by Mr. Boggs had actually been written in the will.

There remains to be considered the question of whether
the trust thus created is clear and definite enough in its
provisions and so free from uncertainty that a court of
equity can enforce its execution. The rule seems to be
that whenever the property to which such a trust is de-
signed to attach is not certain and definite, or whenever
the prior disposition of the property by the will is such
as to import the absolute and uncontrollable disposition
of it, a trust will not be created. The earlier English
cases carry the doctrine of precatory trusts to a greater
extent than the later cases, and at present the party claim-
ing that such a trust exists for his benefit must show that
his case falls within the rules of certainty of subject mat-
ter, as well as establish the intention to charge the prop-
erty. A trust must be reasonably certain in its terms,
as to the property embraced in the trust, the beneficiaries,
the nature of the estate they are to have, and the manner
in which the trust is to be executed, and when either of
these elements is indefinite and uncertain the trust must
fail. 3 Pomeroy, Equity Jurisprudence, sec. 1009. If

there is such uncertainty that it cannot be known who is to take as beneficiary the trust will fail, or if the property which is attempted to be put in trust is so uncertain that it cannot be separated or distinguished from the individual property of the trustee the trust will be void for uncertainty. No trust will be created where the property to be the subject of the trust is left uncertain. *Winch v. Brutton*, 14 Sim. (Eng.) 379; *Fox v. Fox*, 27 Beav. (Eng.) 301; *Cowman v. Harrison*, 10 Hare (Eng.), *234. Unless the property upon which the trust is to operate can be ascertained an express trust will fail, and so of a constructive trust whose extents and limits are the same as the express trust which it attempted to create. Whether express or constructive the same certainty as to the property is essential. Note to *Knox's Appeal*, 6 L. R. A. (Pa.) 356; 2 Story, Equity Jurisprudence, secs. 1070, 1073.

The same night that the will was executed Mr. Boggs inquired of Mr. Connell whether he could not give his wife outright certain other property, and, upon being told that he could, directed Westerfield to prepare a deed to the same real estate specifically devised to his wife and an assignment of certain notes secured by real estate mortgage amounting to about $72,000. These papers were prepared, and the next day executed by Mr. Boggs, and delivered by him to Mrs. Boggs, so that property to that extent was removed from the operation of the will. Mrs. Hoover testifies her brother told her after this that he had given his wife $25,000 or $30,000 to do with as she pleased, while other testimony would indicate an intention to include the whole estate in the attempted trust. We are uncertain from the evidence whether it was the intention of Mr. Boggs that the personal property which he thus segregated and delivered to Mrs. Boggs in his lifetime and the real estate thus conveyed to her should be impressed with a trust, or whether it was his intention that this property should become hers absolutely. All authorities agree that in order to create a trust the intention must be clear and satisfactory. As to this property we believe the evidence

is not sufficient to justify a court in impressing a trust upon it for the benefit of the plaintiffs. If it had been Mr. Boggs' intention so to do at the time he signed the will he evidently changed his mind. At all events there is too much uncertainty about the transaction to warrant this court in holding that this property was not given absolutely to the wife. It is incumbent upon the plaintiff to establish clearly the existence of a trust upon the property, and this they have failed to do.

As to the request that Mrs. Boggs should make a will in favor of the plaintiffs there are several reasons why this cannot be enforced. Mr. Boggs said in making the request: "If you want to give anything to a charitable institution, or anything else, why do it, say five or ten thousand dollars. I want the bulk of my property to go to my people." Under the provisions of the trust in Westerfield all of the real estate might be sold by the direction of Mrs. Boggs. She might use the proceeds for her living, or dispose of it as she pleased. Under the oral request she might give to charity, or anything else, five or ten thousand dollars, and was only asked to bequeath "the bulk" of the property to his relations. There is no certainty in the property here. Mrs. Boggs could convert all of the real estate into money, could use as much as she pleased, could give to charity an indefinite sum, and was only asked to leave the "bulk" of the property to the plaintiffs. Where "the bulk of the property" is given the amount is uncertain and the trust must fall. *Palmer v. Simmonds,* 2 Drew (Eng.) 221. In *Curtis v. Rippon,* 5 Mad. (Eng.) 434, a testator gave all his property to his wife "trusting that she would use it for the spiritual and temporal good of herself and children, remembering always the church and the poor." The vice chancellor held "the wife absolutely entitled to the property, there being no ascertained part of it provided for the children, and the wife being at liberty at her pleasure to diminish the capital either for the church or for the poor." See also 1 Lewin, Trusts, *132, *133, *134; *Knight v. Knight,* 3 Beav. (Eng.) 148.

In *Eade v. Eade,* 5 Mad. (Eng.) 118, the bequest was, "I give all the remainder of my effects, cash, goods, plate, books, etc., of every description to my wife, Alice Eade Eade (the plaintiff) requesting that she will at her death leave 200*l.* to each of the Miss Nortons and leave the remainder of her property to my nephews, George and William Eade, in such proportions as she thinks proper." Sir John Leach, vice chancellor, says: "A request or recommendation will raise a trust, if the objects and that the property are described with such certainty that the court can execute it. The defendants, the Miss Nortons, are plainly entitled to the legacies of 200*l.* each; and if the testator had requested his wife at her death to leave the remainder of his property to George and William Eade, there would have been a clear trust in their favor, because the remainder of the testator's property could have been ascertained. I cannot say that by the remainder of *her* property at her death he meant the remainder of *his* property. It must be understood to mean such property as she happened to possess at her death, from whatever source derived. This testator having therefore, in effect, left his wife at liberty to deal with the remainder of his estate as she pleased, his request as to the uncertain property of which she might be posessed at her death, cannot create a trust."

In *Bryan v. Milby,* 6 Del. Ch. 208, 13 L. R. A. 563, the gift was of all of the estate to the testator's wife. "And I do *request* my wife if she should not *require* the whole of my estate *as a support,* that she will will at her death the remainder to the children of my brother, Charles A. Bryan." Saulsbury, chancellor, said: "The subject of the gift claimed as precatory was not certain. * * * There might be, or there might not be, any remainder of his estate which could be enjoyed after his wife's death by any person whomsoever. A necessary ingredient or characteristic, therefore, in a precatory devise or gift is wanting in this case. There was nothing that this court could have ordered impounded if application for that purpose

had been made to it. I must therefore decide, and I do so decide, that the gift to Mrs. Bryan was absolute and unconditional, and not upon an obligatory trust in favor of the complainants." See also *Bills v. Bills,* 80 Ia. 269, 8 L. R. A. 696; *Cornwell v. Wulff,* 148 Mo. 542, 45 L. R. A. 53; *Orth v. Orth,* 145 Ind. 184; *Howard v Carusi,* 109 U. S. 725, 731, 3 Sup. Ct. Rep. 575.

We deem it advisable to note and distinguish in this connection the case of *Little v. Giles,* 25 Neb. 313. In that case the facts were that one Jacob Dawson made an absolute bequest of his estate to his wife with power to sell as long as she remained his widow, upon the condition that if she married again "all of the estate herein bequeathed, or whatever may remain," should go to his children. The court held that a conveyance of the real estate by Mrs. Dawson after the death of the testator, and before her remarriage, conveyed the fee to the realty, and her subsequent marriage did not affect the title to the same. In the opinion there are cited, apparently with approval, a number of cases holding that, whenever it is the intention of the testator that the devisee shall have an absolute property in the estate devised, a limitation over must be void, because inconsistent with the absolute property in the first devisee. The question whether or not the limitation over of "whatever may remain" was void was not in issue in the case and was not passed upon by the court. This is pointed out by Mr. Commissioner AMES in *Schimpf v. Rhodewald,* 62 Neb. 105, wherein he says that, in *Little v. Giles,* "this court did not definitely or distinctly decide whether the widow took the whole estate in fee and the devise over was void, or whether she took a life estate only, with power to sell and convey the fee and the devise over was valid and effective upon the undisposed of residue, if any, at the date of her marriage. * * * 'Conveyances executed by the devisee during her widowhood were alone in the controversy, and it was held that during that time she had power to convey the fee. This sufficed for the disposition of the suits, and that this was all that this court

definitely decided, is apparent from the syllabi in *Little v. Giles, supra,* which were prepared by the same hand that wrote the opinion in that case.' "

To effectuate the request made by Mr. Boggs that his wife should make a will in favor of the plaintiffs is impossible, for the court has no power to regulate Mrs. Boggs' discretion as to the amount of any gift she may desire to make to any charitable institution, or for any other purpose, nor to say she shall or shall not dispose of a large part of the estate as best seems to her. Further than this "the bulk of my property" is a very vague, uncertain and indefinite term, not subject to definite ascertainment. It may vary from a little over half to nearly the whole estate, and is not susceptible of being rendered certain by any proceedings within the power of a court.

There remains to be considered whether or not the direction that the surplus money in Mrs. Boggs' hands each year, if any there should be after she had had everything she wished, was to be divided between the plaintiffs, can be enforced as a trust. We may assume that the direction given by Mr. Boggs was positive enough to make it the duty of his wife to carry out his wishes, if the property upon which the request was intended to operate was sufficiently definite in amount and subject matter, and did not depend upon the absolute power of disposition of the trustee as to whether there would ever be any property upon which it could operate.

In *Cowman v. Harrison,* 10 Hare (Eng.), 227, the testator gave his wife a yearly income from certain property and "particularly recommended, desired, and directed his wife, at her decease, by will or otherwise, to divide or dispose of what money or property she might have saved from the yearly income thereinbefore given to her, amongst all his children in equal shares." The vice chancellor said: "The first question which arises, is upon the right of the children and parties claiming through them under the will of John Barwise the father to the savings of the

income of Joanna the widow. Two views were put forward as to the effect of this clause with regard to the savings. The plaintiffs argued that it was a gift of the income to the widow for her life, with a gift over to the children of so much as she might not spend, bringing the case within *Surman v. Surman*, 5 Mad. (Eng.) 123. On the other hand, the defendants contended, that this was a precatory gift, a gift made by means of a request imposed upon another, to whom the beneficial interest is given. The first thing to be considered is, within which class the disposition falls, which must be determined by the subject of the gift, and the terms of the bequest. The subject of the gift in this case is 'savings.' The 'savings' are to be made by the widow. The amount of such savings is dependent entirely upon her. It cannot be imputed to the testator that he intended this part of his will as an inducement to his widow to spend the whole of her income; and if not, what then did he intend that she should save? He meant to give what she might save, but what she saved would depend entirely on her will and pleasure; and so far therefore as regards the subject of the bequest, it was to be the testator's gift; but whether there should ever be anything upon which it could take effect depended upon the will and pleasure of the widow. Then what are the terms of the bequest? The widow is to dispose of it by will or otherwise. It is under her disposition that the children are to take. They take under her disposition, made by the testator's desire, and not under any gift contained in his will. This is the very nature of a precatory gift. It is not the case of a gift to A with a gift over of the subject to B; but it falls within the class of cases where there is a gift to A, with a request that he will bequeath it to B. I am of opinion, therefore, that this is a precatory gift. The next question is, whether, as a precatory gift, it is good. The rule as to such gifts is, that there must be a certainty of subject; and the foundation of that rule stands on very solid grounds. The right of a donee to spend the subject matter of the gift is inconsist-

ent with the nature of a trust; and the court therefore collects in that case, that there can be no intention to impose a trust. The disposition is such, that, if a trust were raised, it could not be enforced; and the court therefore will not impute to the testator an intention to raise it."

This principle is applicable in the case at bar.

In the instant case the amount of money which is necessary for the support and maintenance of the appellee is left entirely uncertain, no limit is placed to her expenditures for her own use. Is it not beyond the province of a court to act as custodian, director and purveyor of the household expenses of an individual in a case where the expenditure is left alone to the individual's discretion? Courts of equity in this country have not been swift to assume the plenary powers so often exercised in England by the court of chancery. The court cannot undertake to control her expenditures, to dictate how much she shall pay for her clothing, for the furnishing of her home, the exercise of hospitality or for whatever outlay she may desire to make. It was her husband's intention that she alone should have the control over the amount of money she should spend. If she desires to travel she has the right to do so, provided the income is sufficient to pay her way. The court cannot undertake to limit nor prescribe in any manner or in any form the amount of money which she may use. It is within her power to spend all the income if she so desire, and thus leave no surplus upon which the trust may operate. Since the amount of any surplus liable to be divided between the appellants is uncertain, indefinite and incapable of ascertainment, a court of equity will not attempt to establish or administer such a trust. A court can only enforce a disposition of property which has been made by the deceased if it is capable of being enforced, and will not attempt to make a new disposition of it, or to make more definite and specific the disposition of the property which the testator may have made himself. From these considerations we conclude that the direction by Mr. Boggs that the surplus income

47

each year coming to his wife from the property left to her by the will cannot be adjudged and set apart to the plaintiffs by a court by way of enforcing a trust in the same on their behalf.

Upon the whole case we are of the opinion that we cannot make that certain which was left uncertain by the testator, and cannot establish and fix a trust upon the property for the appellants' benefit.

We recommend that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed January 3, 1906. *Reversed with directions:*

Wills: BEQUESTS: CONVEYANCES: TRUSTS. B a short time before his death, which he knew must soon occur, devised and bequeathed to his wife (they both being advanced in years and childless) certain of his real estate and all of his personalty, to have and to hold absolutely and unconditionally in her own right forever. The remainder of his realty, being the major portion of his estate, was devised to W, trustee, upon the following trusts: (1) To pay out of same the expenses of maintaining the trust. (2) To deposit to the credit of his wife for her own use the net income therefrom. (3) On request of the wife in writing to sell any part thereof and deliver to her for her own use absolutely the proceeds, or otherwise invest the same in the name of the trustee for the purposes therein specified as she may direct. (4) Upon the decease of the wife to divide whatever of his said estate as shall then be remaining between the brothers and sisters of the testator (naming them) share and share alike, and the issue of deceased brothers and sisters, if any. Before the will was executed the wife was called into the room and it was read over to her, the testator asking if it suited her, and she answered in the affirmative. He then made certain oral requests and directions with reference to his estate, the substance being that he had placed her (his wife) in comfortable circumstances so that she

would not want for anything; that he wanted her to live as they were living, and at the end of every year to divide the surplus among his people; that her people were in good circumstances, but his people were poor, and that he wanted her to make a will so that at her death his estate would go to his brothers and sisters; that if she wanted to give to charitable purposes say five or ten thousand dollars, that would be all right, but that he wanted the bulk of his estate, his entire estate, to go to his brothers and sisters. To all this she expressed her assent and entire willingness to carry out the testator's wishes. The wife shortly after the execution of the will expressing fear that it would be contested, the husband by instruments of conveyance and assignment absolute and unconditional in terms transferred to her substantially all the property going to her directly by the terms of the will. After the death of the testator the wife refused to comply with the parol requests and directions made at the time of the execution of the will and assented to by her, and disavowed their binding and obligatory character on her, asserting that she had an uncontrolled discretion as to whether any of the property or the income therefrom passing by the will should go to the collateral heirs of the testator. *Held:* (1) Conceding that the wife became the general owner of the property embraced in the express trust because of the power given to alienate and acquire legal title thereto and to the proceeds thereof in her own right, that a constructive trust arose in favor of the collateral heirs as to all such property, and that the wife should be charged as a trustee *ex maleficio.* (2) That her interest in such property, the proceeds thereof and the net income therefrom was limited to the amount reasonably necessary and required to support and maintain her in the comforts and style of living to which they had been accustomed, and to give not to exceed ten thousand dollars for charitable purposes, the equitable title to and interest in the remainder passing to the collateral heirs named in the will, and to be distributed between them according to its ·terms and the parol requests and directions of the testator. (3) That the property to which the constructive trust attaches is sufficiently definite and certain as to render the trust capable of execution and enforcement, and that our former holding to the contrary should be modified accordingly.

HOLCOMB, C. J.

In the opinion heretofore filed will be found a full and accurate statement of the case, and but little need here be added in order to intelligently understand the controverted points and the course of the discussion to follow. *Smullin*

*v. Wharton, ante,* p. 667. The suit was begun for the purpose of having declared and established a trust in favor of the plaintiffs, appellants here, in the property devised to the defendant Ida M. Wharton, formerly Ida M. Boggs, appellee. The trust sought to be fastened on the property rests in parol, and one of the vital questions for determination is whether the words spoken by the testator when he executed his last will, whereby the property was devised to the appellee Ida M. Wharton, are to be construed as mandatory, and sufficient under the circumstances to raise a constructive trust in favor of the appellants, or were merely precatory, leaving to the legatee an uncontrollable discretion as to whether she would comply with the expressed wishes and desires of the testator made at the time of the execution of his last will. In the former opinion the issues were generally determined in favor of the contention of the appellants, but the trust sought to be fastened on the property, it was held, must fail because of the lack of certainty and definiteness of the subject of the trust, the property embraced within it, or on which it would operate, and, for that reason alone, the alleged trust was declared indefinite, uncertain and incapable of enforcement. Upon further consideration of the case, and after listening to able and exhaustive arguments of counsel, and considering the subject with the aid of printed briefs thoroughly covering the case in all its phases, with numerous citations of authorities, we are not disposed to recede from anything said in the former opinion as to the plaintiffs' contention being well founded in all respects in so far as these contentions were upheld. We purpose now to address ourselves more directly to the question of whether the trust sought to be declared and established ought to fail because of a lack of certainty as to the property embraced in an otherwise valid and enforceable constructive trust arising in favor of the appellants. In order to gain a somewhat clearer idea as to what the testator intended regarding the ultimate disposition of his property, and what his directions were in respect thereto, and how his lan-

guage should be construed, both spoken and written, it may be of benefit to note some of the indisputable facts established by the record. The controversy is between his near blood kindred, his brothers and sisters and their issue on the one hand and his surviving wife on the other. He and his wife had passed the meridian of life and were childless. He was devoted to her, and had the full measure of love and affection for his near relatives, who were in comparatively poor circumstances. He had been more successful and during his life had accumulated a competence; his estate at the time of his death being of the approximate value of $250,000 or upwards. He died June 1, 1895. In November, 1883, he wrote his own will, giving his wife one-half of the whole of his real and personal estate, and to his near blood relatives the other half. In March, 1893, he executed a new will whereby he gave to his wife absolutely and unconditionally, to have and to hold, all of the same absolutely and unconditionally in her own right, his home property, consisting of two lots in the city of Omaha, and in addition thereto the undivided one-half of all his other real estate, and also absolutely and unconditionally all his personal property of whatsoever nature of which he might die seized and possessed. The remainder of his real estate was devised to Harry A. Westerfield as trustee upon the following trusts: (1) To pay out of the same all the expenses of maintaining the same and administering the said trust. (2) To deposit in bank to the credit of his wife for her own use the net rents, issues and profits thereof. (3) On the request in writing at any time of his said wife to sell any part thereof and to deliver to her for her own use absolutely the proceeds of such sale, or otherwise invest the same in the name of the trustee and for the purposes herein specified, as she may direct. (4) Upon the decease of his said wife his trustee was directed, without unnecessary delay, to divide whatever of his said estate as should then be remaining in this trust equally, share and share alike, between his brothers and sisters and the issue of deceased brothers and sisters.

if any, such issue to take the share of the deceased parent. The will as thus executed, it is manifest, was not entirely satisfactory to the testator, and he, a short time before his death, more than once spoke of having it changed. On the 16th day of May, 1895, and within a few days of his death from an illness he knew must shortly terminate fatally, a third will was drawn by his lawyer and duly executed, and by which he died testate, in which there were no substantial changes from the provisions contained in the second except that, as to his real estate, his wife was given absolutely and unconditionally in her own right the home place and one certain other lot situated in the city of Omaha, all the remainder of his real estate being devised in trust in the identical language, and under the same provisions, contained in the second will. In all other respects the latter two wills were similar in their wording and terms. It is obvious that the testator, when the last will was executed, and when impending dissolution was near at hand, was desirous that his near kindred should share in his bounty, else why did he place the bulk of his property in trust with the trustee named, and provide so minutely for its final distribution, or what was left of the trust estate, to them in the manner expressed in the will? It is apparent from the record that the testator had some misgivings regarding the terms of the will as last drafted, for it is in evidence that during the reading of the provisions relating to the trust estate the testator inquired of his lawyer, who drafted the will, if that could not be changed, and that, in substance, the reply was made that his wishes were expressed as well as they could be in any other way. And it is in evidence also that in the conversation following between the testator, his wife and his lawyer, the latter said to him in substance, that whatever was given to the wife should be given out and out; that the testator did not want to give her anything "with a string tied to it," and added, "I know Mrs. Boggs, and she is disposed to do the fair thing, and I know that she will carry out your wishes."

But one inference can be drawn from the remarks to

which we have alluded, and that is, that the testator was gravely concerned about his relatives and the certainty of their becoming the beneficiaries of his bounty, as he clearly intended and desired that they should. His wife was provided for to the full extent of his ability beyond peradventure of doubt, but the status of his relatives, those named in the express trust provisions, was not clear to him, and whether or not, perchance, they might receive nothing was what led to his inquiries of his counsel, and expressions of desires and directions to his wife, and fully accounts for the conversation between them out of which a constructive trust, if one exists, must arise. The former opinion treats fully of this phase of the case and we need not undertake to review the transaction in detail. Suffice to say that in these verbal requests and directions on the part of the testator to his wife as to the ultimate disposition of his estate, which she assented to and expressed herself as perfectly willing to carry out in the utmost good faith, the substance was that he wished his wife to enjoy the use of the property, or such portion thereof as might be found necessary to support and maintain her in the same comfort and style of living they were accustomed to, and that the surplus, if any, of the net annual income of the estate devised in trust should be divided between his relatives mentioned in the will, and that such of the estate as remained at her death should likewise pass to the same persons or, in the event of the death of any of them, to the children of such deceased person. It is upon these oral statements, assented to by the wife, and her promises and agreement, resting in parol, as they do, and refusal to comply with them, that appellants ask that a constructive trust be established and decreed in favor of such heirs upon all of said estate and the net income therefrom, above that required to maintain the wife during her lifetime, and her right to bestow for charitable purposes a sum not exceeding ten thousand dollars.

Soon after the execution of the will the wife, it appears, became alarmed lest the will should be contested, and

desired to know of the testator what she should do in the
event her fears were realized. The testator, while express-
ing confidence that no contest would be instituted, ad-
vised her to resist if one were begun. This conversation,
as we view the record, explains why the testator, after the
execution of the will and before his death, conveyed and
transferred absolutely and unconditionally, by duly ex-
ecuted deeds of conveyance and instruments of assign-
ment, all of the real estate mentioned and described in
the will as passing to her directly, and substantially all
the personal property, the instruments of assignment cov-
ering specific property, while by the will all his personal
property was bequeathed to her. By these instruments,
if they are effective, with the exception of a small amount
of personal property, the trust estate alone was left to be
administered upon under the terms of the will. In the
opinion heretofore prepared by the commissioner and
adopted by the court, it is held that a constructive trust in
favor of the appellants was created by the oral requests
and directions of the testator, the assent of the wife
thereto, and her attempted repudiation of the obligation
she assumed regarding the final disposition to be made of
the estate of the testator, but for the fact that the subject
of the trust, that is, the property on which it was at-
tempted to be fastened, and on which it was to operate,
was too indefinite and uncertain, the trust therefore fail-
ing because incapable of enforcement. It is to this latter
conclusion that complaint is made in the motion for a re-
hearing, and for the further consideration of which oral
arguments on the motion were requested.

It is manifest, we think, that the testator intended to
provide for the comfort, care and support of his wife dur-
ing her lifetime to the extent, if required for that purpose,
of the whole of his estate, and undertook to accomplish
this purpose in such a way as that no future contingency
or misfortune should result in a miscarriage in the be-
stowal of his bounty on her, the first and principal object
of his solicitous care and loving affection. It is equally

manifest, as it seems to us, that after his wife had been surely and certainly provided for so that she might live as they had lived in the past, the remainder of his estate should go to the children of his own father and mother and their children, rather than to her heirs or to strangers. In reaching this conclusion we have ever kept in view the indisputable evidence of his intentions, as disclosed by the several wills by him executed, in connection with the more or less uncertain and unsatisfactory testimony of the several witnesses concerning the transaction and conversation between him and his wife occurring at the time of the execution of the last will. These written documents,. when considered alone, furnish substantial evidence disclosing an intention on the part of the testator in disposing of his property to bestow a portion of it on his own kindred, unless required by his wife for her own support and living according to their station in life. It is to be observed that in the first will the property was divided equally between his wife and his collateral heirs, and in the second and third it was divided into two portions, one of which was given to his wife absolutely and unconditionally in her own right, and the other portion was devised to Westerfield in trust and upon different terms than that devised directly to the wife. In the trust provisions it was not mentioned that the wife should become the unconditional and absolute owner. The power of alienation given her was, it is true, for her own use absolutely. That is, in the one case the property passed to her in her own right absolutely, while in the other the power of disposition was restricted "for her own use absolutely," the remainder, if any, to be among the other objects of his bounty as therein named. The testator manifestly had a purpose in thus providing for the devolution of his property, and to ascertain that purpose we need not, as we view the record, search in vain. There was certain of his property he desired should pass to his wife directly, unconditionally and absolutely in her own right. Other property he preferred to place in trust, with the right to

his wife to its use for her maintenance and support during her life, the remainder to go to and be divided between his relatives as therein mentioned at her death. We are not to be understood as saying that the wife's title to the trust property was legally charged with an express trust in favor of the other devisees mentioned, and yet it is not altogether clear that such a result may not legally flow from the provisions of the express trust. It would seem that there would be merit in the argument that she would not in equity be permitted to dissipate this trust property, use its proceeds extravagantly, nor, for the same reason, transfer it to third parties merely to convert the property to her own right and ownership, and thus deprive the other devisees of any share in the estate. When the testator made provisions for the expenses of maintaining this trust, and of selling and reinvesting the proceeds, and of distributing the remainder at the death of his wife to his near kindred, it is obvious that he contemplated that there would be property to be thus administered in trust during the whole of the lifetime of his wife, and ultimately divided between those who were undoubtedly the objects of his bounty second only to her.

Passing this point, however, and treating the wife, as we do, as the general owner of, and with power to acquire the legal title to, the property covered by the express trust, and construing the power of alienation therein given her as being inconsistent with a gift over to the other beneficiaries therein mentioned, and therefore free from a trust arising in their favor subject to her right to use what is reasonably necessary to support her during life, it must, we think, follow, as expressed in the former opinion, that the oral requests and directions of the testator made at the time of the execution of the last will, and assented to by the wife, raise a constructive trust in their favor as to all such property, and the wife should be held with reference thereto as a trustee *ex maleficio*. To hold otherwise is to ignore the expressed will and manifest desire of the testator, and the effect would be to per-

mit the devolution of this property to the heirs of the wife
and to strangers, where it is obvious he never intended it
to go and was especially anxious and desirous that it
should not go.   To allow the wife to take this property
unconditionally in her own right, to do with it according
to her uncontrolled discretion, is, as it seems to us, to
thwart the testator's clearly expressed intentions, and to
authorize the accomplishment of what he made an earnest
effort to avoid, and would have, beyond doubt, avoided in
no uncertain way or ambiguity of expression, were it not
for his settled determination to provide for his wife's
support and maintenance to the utmost extent of his power
so to do, and the absolute confidence he reposed in her that
she would carry out his known wishes by giving to his
own near kindred that portion of his estate devised in
trust, and not required for her own support in maintain-
ing her in comfort and according to the style of living
they had been accustomed to.   It is believed that a con-
sideration of the matters contained in the several wills
and the manner of their execution lend confirmation and
added emphasis to these views.   We are of the opinion
that the oral requests and directions of the testator, and
the assenting thereto by the wife at the time of execution
of the last will, when, while the shadow of death was
creeping over him, he was attempting to make satisfac-
tory arrangement and final disposition of his earthly
affairs, place the matter of a constructive trust arising in
favor of the collateral heirs beyond the pale of serious con-
troversy.   To now construe the will, and the parol agree-
ment in relation to the property, as authorizing the wife
to take the property absolutely and unconditionally, would
result in a fraud on his right of disposal of his property
and on the rights of those who were the objects of his
bounty after his wife was provided for.   It would be by
her own wrong that she obtained the possession of and
right to this property, and equity will not permit her to
do that.   When the testator expressed the desire that the
"bulk of his estate (the bulk of) his entire estate," should

go to his own people he was, as we view his language and surrounding circumstances, evidently speaking of the estate charged with the express trust.

We are led to this conclusion because of his separation of his estate into two parts, and of the language used in providing for the disposition of each portion. Relative to that portion passing to his wife directly, he used strong and positive terms, disclosing an intention to bestow such property on her absolutely, without condition and in her own right forever. These words and the terms used are inconsistent with the idea that she took only a life estate, or an estate charged with a trust in favor of his collateral heirs. Furthermore, three or four days afterwards, by the most formal sort of conveyance and written assignments this same property, or substantially all of it, was transferred to his wife as fully and unconditionally as it is possible to transfer the highest and most perfect known title to property. The other wills disclose indubitably a disposition on the part of the testator to give a portion of the estate absolutely to his wife and the remainder to his collateral heirs. Giving due considerations to all of these evidences as to his intentions, and his verbal expressions made at the time of the execution of the last will, it seems reasonably clear that he impounded a specific portion of his estate, the bulk of it, to be used, first, for the support of his wife, if required, and second, the remainder to go to his heirs as named in the provisions of the express trust found in the will. If from the record the deduction be proper that a constructive trust should be declared and established, as is held in the former opinion, except for a sufficient description of the property to which the trust attaches, and it be now, upon further consideration, determined that the property embraced in the constructive trust is the same as covered by the provisions creating the express trust found in the will, then it occurs to us that there exists no serious difficulty in ascertaining with reasonable definiteness and certainty what property the trust is fastened upon, and enforcing the trust according to the de-

clared will of the testator.   We think it is tacitly conceded in the very able argument of counsel for appellees that if all the other elements of a constructive trust are found to exist, the element of description and certainty as to the property embraced in the trust is not so lacking as to be fatal, or that the trust must fail on that account.   What counsel for appellees do argue is that, in determining whether a trust is created, we must look to the written instrument as well as the oral declarations of the parties made at the time, and that, when so considered, the evidence fails to establish the trust alleged.   It is contended that the most that is fairly inferable is that the spoken words of the testator are merely precatory, and that it is left wholly to the wife's discretion whether she will bestow any of the property on those mentioned in the express trust provisions of the will.

We are not disposed to recede from anything said in the former opinion, save in respect of the question of the certainty and definiteness of the property embraced in the trust resting in parol.   If this language be construed, as we think it should be, as applying to the property devised to Westerfield in trust, and as giving to the wife the right to the use of the annual income in so far as it is required to maintain her in the style and comfort she had been accustomed to, and also a like right to the original fund or property devised in trust, if so required for a like purpose, then the matter is resolved into a very simple proposition wherein lies no serious difficulty in the way of the enforcement of the trust.   The five or ten thousand dollars to be devoted to charity, if the wife so desires, involves only a matter of mathematical computation, the limit being ten thousand dollars, the limit in other respects being what is required and reasonably necessary for the support of the wife in the style and comfort in which she had been living. The rights of the parties in the main aspects of the case are well summed up in the former opinion, *ante,* p. 667, in the following language:

"We conclude, therefore, that by the promise made by

Mrs. Boggs to her husband at the time of the execution of the will, relied upon by him in signing that instrument, and her refusal to carry out her promise, she thereby became a trustee *ex maleficio,* if the trust was definite and certain enough to be capable of enforcement. Though no fraud was intended by her at the time, yet by the circumstances of confidence and trust arising from the marriage relation, her husband trusted her and relied upon her to carry out his wishes; and her refusal to do so after her promise and after the property was vested in her was such a fraud as will make her, in equity, a trustee, if a trust was created by the language used by Mr. Boggs. In other words, we conclude that the plaintiffs are entitled to be treated in relation to the estate as if the words used by Mr. Boggs had actually been written in the will."

The ground upon which relief was denied was based upon the holding, which is well supported by the authorities, to the effect that "whenever the property to which it (the trust) is to attach is not definite or certain" a trust will not be created. All the other tests as to what is necessary to create a constructive trust are found to be in favor of the appellants.

Accepting, as we do, the correctness of the proposition with reference to the certainty required in describing property on which the trust is to operate, there yet remains the question, does the description of the property in the case at bar which is embraced in the alleged constructive trust, on account of its indefinite and uncertain character, fall within the rule? It is rightly said in the opinion the declarations of the testator on which the constructive trust rests are to be construed and treated as if they had actually been written in the will. If the testator's language or the substance of it were incorporated in the will, would the court find any difficulty in construing the words used and give force and effect to their evident intent and meaning? We dare say not. Let us consider what the effect would be. They would naturally occur after the main provisions for the disposition

of the testator's estate.   All parts of the instrument, if possible, should and would be given force and effect. They would be inconsistent with and render nugatory the provisions bestowing directly on the wife absolutely and unconditionally in her own right forever certain portions of the estate as therein described.   They would be consistent and in perfect harmony with the provisions concerning the trust estate, and would act as a limitation of the terms therein found which apparently pass to the wife the full and unrestricted beneficial interest in the trust estate. They would make clear that as to this part of the estate she had only the right of use reasonably necessary to support and maintain her as she had been accustomed to living.   The division of the annual net income from this trust estate is what is unmistakably referred to when he expressed the desire that the surplus should go to his relatives.   There can be no mistake about this, and this serves as an explanation as to his purpose to give a portion absolutely to his wife, and reserve, as he did in the last will, the bulk of his estate, first, for her use if required, and second, the remainder to go to his own relatives in preference to hers or some one she might select. The wording in the instrument giving the wife absolute and unconditional ownership in her own right forever in one instance, and in the other restricting the right or interest to her use, has, as we view the subject, a powerful and over-mastering significance.   This view of the matter renders the whole instrument harmonious in all its parts, effective and enforceable.   It, as we look at the record, effectuates the purpose and intention of the testator.   This latter, the testator's intention, is the cardinal rule of testamentary construction.   It is the great underlying principle that should constantly be kept in view.   It is the " 'pole star' or the 'sovereign guide' when referring to this governing principle of testamentary causes; and the doctrine, in one formula or another, is constantly affirmed in the reports.   But it is the intention of the testator as expressed in his own will which governs; and this intention

must be discerned through the words of the will itself, as applied to the subject matter and the surrounding circumstances." Schouler, Wills (3d ed.), sec. 466. On the question of uncertainty the supreme court of the United States, adopting the language of Lord Brougham, said:

"We ought not, without absolute necessity, to let ourselves embrace the alternative of holding a devise void for uncertainty. Where it is possible to give a meaning, we should give it, that the will of the testator may be operative; and where two or more meanings are presented for consideration, we must be well assured that there is no sort of argument in favor of one view rather than another, before we reject the whole." *Home for Incurables v. Noble*, 172 U. S. 383.

In *Cox v. Wills*, 49 N. J. Eq. 130, the legacy was given to the wife "in good faith, believing that she will make a will and thereby distribute so much of the last named legacy among my near relatives as she may not use for comfortable maintenance, and it is my will that my said wife shall make such distribution." The court said: "Power to expend for comfortable maintenance should be *construed*, in my judgment, to mean what is *reasonably necessary* for that purpose, having regard to the previous habits, tastes and style of living of the donee, and the amount of the estate."

In *Cresap v. Cresap*, 34 W. Va. 310, the following language was contained in the will: "I give and bequeath to my beloved wife, A. C. C., in trust for her support and maintenance during her life, all my estate both real and personal with full power and privilege to sell and convey any, all or so much of my real estate in such a manner as she may see fit, in as full and complete manner as I myself can do, to, sell and dispose of my personal estate, or so much as she may see fit, for her own support, according to her condition in life, and for the benefit of my estate, so far as she may see proper." These words, it is held, will not confer upon the wife either a fee simple in the testator's real estate or absolute property in his personal

estate. It is also held that such a provision is not void for uncertainty as to quantity, for the reason that that is certain which may be made certain. In the case at bar we may say, as was said in another case: "If the widow should give away the whole of the estate to strangers, can any one deny that it would defeat the testator's manifest intentions? The question gives the answer and that answer is decisive." See also *Smith v. Bell,* 6 Pet. (U. S.) 68; *Mansfield v. Shelton,* 67 Conn. 390, 52 Am. St. Rep. 285; *Barnes v. Marshall,* 60 Mich. 248, 60 N. W. 468; *Knox v. Knox,* 59 Wis. 172; *Noe v. Kern,* 93 Mo. 367.

Justice and equity require that the alleged trust in favor of appellants found to have been created should be held sufficiently definite and certain in all its essential elements and capable of enforcement, and that effect be given to the expressed intentions of the testator, and a palpable injustice prevented by giving appellants a measure of the relief they are seeking. The former opinion should be accordingly modified, and the trust property held to have vested in the collateral heirs of the testator named in the will, subject to the use of the net annual income and the principal estate by the appellee, Ida M. Wharton, as the same may be reasonably necessary and required to support and maintain her in the style of living she had been accustomed to, and subject to her right to devote not exceeding $10,000 to charity.

The judgment of affirmance is vacated, and the decree of the district court is reversed and the cause remanded, with directions to enter such a decree in the trial court as will fully conserve the rights of both parties in harmony with the views and conclusions herein and in the former opinion expressed and announced.

JUDGMENT ACCORDINGLY.

BARNES, J., dissents.


The following opinion on motion for rehearing and to modify mandate was filed June 7, 1907. *Sustained in part:*

LETTON, J.

The appellee has filed two motions. The first one alleging that the court has not considered or decided the issue of *res judicata* in this case, and urging that the case be reconsidered upon this point. As a second defense it is alleged in the answer that, in the contest of the will, Mrs. Wharton was a party as proponent, and that the plaintiffs in this suit were parties contestant, objecting to the probate of the will and asking for affirmative relief, and that it was alleged by the contestants that, prior to the making of the will, it was Mr. Boggs' wish and intention to give his wife only a small portion of his property absolutely, and the balance for her natural life, and at her death to descend to the plaintiffs, and that she should annually divide between herself and them the net income from the estate, and that Mrs. Wharton did by undue influence induce the testator to make the will offered for probate contrary to what he desired, and for the purpose of excluding them from any share in his property. The answer in this case further alleges that after a trial of the issues it was finally adjudged that the will was valid; that the testator was competent to execute the same; that no undue influence had been exercised, and that all the objections should be overruled and the will admitted to probate. The appellee now contends that the judgment admitting the will to probate is a bar as to the matters set forth in the answer in the will contest to establish undue influence, which are the same facts relied upon in this case to establish the constructive trust; and it is said that the county court in the will contest had full power to grant the relief demanded by the plaintiffs in this case, for the reason that it had equity powers. It is further said that the former judgment is an adjudication that the absolute and unconditional gifts made to his wife were made voluntarily; that the testator was not induced to make the same by any fraud or undue influence of the wife, and that these acts and provisions are in all respects valid.

In the contest case, however, the plaintiffs sought to set aside the will entirely, in order that they might acquire the estate by the laws of inheritance; while the purpose of this action is directly contrary in that it assumes and adopts as its basis the validity of the will, but seeks to impress upon certain of the property conveyed by the will to Mrs. Wharton a trust for the benefit of the plaintiffs. The relief sought in this case is inconsistent with the theory upon which the will was contested. In the probate court the plaintiffs could not have said with one breath that the will was invalid because it was procured by fraud and undue influence, and with another that the will was valid, but a trust was impressed upon certain of the property conveyed by it. It is unnecessary to decide whether the present action could have been maintained in the first instance in the county court. It could not have been maintained at the same time that the appellants were contending that the will was void, and that they took the property as heirs at law. The matters given in evidence in the contest proceedings with reference to the circumstances surrounding the making of the will, which were urged as tending to show undue influence, while insufficient to establish this fact, were yet material to consider upon the theory that the will was valid, and that a trust *ex maleficio* was impressed upon the property, and the decision establishing the validity of the will is not conclusive upon the question whether or not a constructive trust was raised.

In the opinion of this court upon the contest of the will it is said:

"He (the testator) had asked his wife, and she had agreed, to give whatever of the income she did not need or use to his relatives, for whom he made no immediate provision, and had also asked her to make a will in their favor. * * * Where undue influence is charged, the question is, in substance, whether or not the testator acted freely and upon his own judgment or under some species of coercion or imposition." *Boggs v. Boggs*, 62 Neb. 274.

In the present case the question is whether he was led to exercise his judgment and free will in her favor, relying upon her promises to do for his relatives that which, but for his reliance upon her promise, he would himself have done in his will. The first decision determined that the will of the testator was not overcome by the will of his wife. The present case determines that his action was so far dependent upon her promises that she is constituted a trustee to carry out those promises. Manifestly these conclusions are not inconsistent with each other.

By the second motion the appellee urges the court to interpret the opinion, and to modify and make definite and certain the directions to the district court, in substance, so as to direct that the maintenance of Mrs. Wharton according to the testator's wishes be charged upon the income and *corpus* of the trust estate devised to Westerfield, and also to charge the legal expenses incurred by Mrs. Wharton in sustaining the will of the testator, and in defending this action, upon the same trust estate, and to take an account necessary to make such provisions. While we think that the last opinion filed in this case sufficiently evidences the intention of the court, still there are some expressions used which perhaps tend to ambiguity, and which may not be as clear as may be desired. We therefore deem it well to amplify and, if possible, make more specific and definite our views as to the duty and liability of Mrs. Wharton with reference to the proceeds of the property impressed with the trust.

We think it is clearly pointed out in the opinion that, after the conversations occurred upon which it is held the constructive trust arose, the testator removed from the operation of the trust certain specific property of which he made an absolute gift to his wife, free and untrammeled by any restrictions or limitations of any kind or nature whatsoever. This included the home and other real estate and personal property. With this property so conveyed the *cestuis que trustent* have no concern whatsoever. They have no interest in it. It belongs solely to Mrs. Wharton.

Both the property itself and the income from it are hers to do with as to her seems best. The remaining property was placed in trust with Westerfield, with the right to his wife to use the income from it, or if necessary the *corpus* thereof, for her maintenance and support during her life, in her accustomed style, or to give a part to charity, and the annual surplus income after this was done, and the property in trust remaining at her death, was to be divided among his relatives. It was from the property devised to Westerfield in trust that the wife was to obtain the income required to maintain her in the style and comfort she had been accustomed to, and not until this had been done did any right exist on the part of the plaintiffs to share in the income or in the fund. It is urged that it was Mr. Boggs' intention that the income of all the property should be used, so far as necessary, for her maintenance, and that the surplus should then go to the heirs, but this conclusion is incompatible with the idea of the subsequent absolute conveyance to the wife of the property not in the Westerfield trust. It was evidently Mr. Boggs' intention to make assurance doubly sure, by giving his wife for her maintenance, first, the income from the trust estate, and, if that were insufficient, then the body of that estate to the extent necessary, leaving her own absolute property which he conveyed to her to be untouched unless the trust estate were exhausted. We think also that it was clearly his intention that the property used as a home should be preserved for that purpose, and we think it would be a violation of the testator's intention if the homestead were disposed of or vacated, and a sufficient amount taken from the income of the trust estate to provide another residence. These conclusions of course are to be taken together with the language in the second opinion, and are simply explanatory of what has been said therein.

Mrs. Wharton's reasonable expenses in the litigation in which the will was established should be paid out of the whole estate taken under the will, including taxable costs and reasonable attorneys' fees. The taxable costs in this

case should be adjudged against Mrs. Wharton personally, each party paying their own attorneys.

The motion of the appellee is sustained so far that the case is remanded, with directions to the district court to take an account of and ascertain what sum per annum is sufficient to support and maintain the appellee, Ida M. Wharton, using the family homestead, according to the style of living to which she was accustomed at the time of the death of the testator, and to charge the payment of the same annually during her life upon the income of the trust estate devised to Westerfield, and upon the *corpus* thereof if the income is insufficient, and according to the conditions of said trust; second, to charge the said appellee as trustee in trust, to pay and distribute annually all such surplus income from the trust estate, if any there be after providing for the maintenance of the appellee as aforesaid, and such gifts to charitable purposes as she may desire to make from time to time, not exceeding $10,000 in all, to the brothers and sisters of the testator, share and share alike, the issue of deceased brothers and sisters, if any such issue, to take the share of the deceased parent; third, for such other accounting and decree as may be necessary to carry fully into effect the provisions of the constructive trust declared to exist, and of the trust declared by the will in Westerfield, and according to the views expressed in the opinion by Chief Justice HOLCOMB, and of this opinion.

JUDGMENT ACCORDINGLY.

The following opinion on motion for rehearing was filed October 3, 1907. *Rehearing denied:*

By the Court: In the brief upon the motion for rehearing one point only is discussed. It is contended that the judgment in the former action in which the probate of the will was contested is a bar to this action. The promise of Mrs. Boggs (now Mrs. Wharton) to carry out certain pur-

poses of the testator did not have the effect to overcome his will and judgment. It therefore was not adjudicated in the former judgment that no such promise was made. Such promise did not constitute undue influence, and the judgment establishing the will, by which it was determined that the will was not procured by undue influence, did not determine that no such promise was made. To procure one to make a contract or will by entering into a distinct contract, or by making a distinct promise, is not ground for setting aside the contract or will- so induced, but is rather ground for enforcing the promise which induced the making of the contract or will. There was no specific finding in the contest case that Mrs. Boggs did not make the promises that she is now alleged to have made. The general finding that the will was not procured by undue influence does not negative the existence of such a promise, because such promise to accept a trust under the will and to provide for the testator's relatives as he desired can be enforced and did not require that the contest be sustained. The question therefore whether Mrs. Boggs made such promises as to constitute her a trustee *ex maleficio* was not determined by the former decision in the contest of the will.

The motion for rehearing is

OVERRULED.