Jeannetta Myers Tucker, appellee, v. The Heirs, Devisees, Legatees, Personal Representatives, and All Other Persons Interested in the Estate of Charles Myers, Deceased, Real Names Unknown, appellants.

37 N. W. 2d 585

Filed May 19, 1949. No. 32608.

*Helen C. Myers* and *William H. Hein,* for appellants.

*P. E. Romig* and *Albert T. Reddish,* for appellee.

Heard before Simmons, C. J., Carter, Messmore, Chappell, Wenke, and Boslaugh, JJ.

Carter, J. ·

This is a suit praying for the construction of the last will and testament of Charles Myers, deceased, and to quiet the title to the real estate owned by Myers at the time of his death in those persons found to be entitled

thereto under the will. The trial court found for the plaintiff and defendants appeal.

The will here involved was executed on August 24, 1914. The wife of the testator preceded him in death by approximately three years. No children were born to the testator and his wife, Anna Myers. At the time of the execution of the will the deceased, Charles Myers, had three brothers and two sisters living, namely, Edgar Myers, Nellie Myers Riggen, Winfield Myers, William J. Myers, and Jeannetta Myers Tucker. All brothers and sisters preceded Charles Myers in death except Jeannetta Myers Tucker, the plaintiff in this suit. The defendants-appellants are the sons and daughters of the deceased brothers of the testator, the deceased sister leaving no issue. The question to be determined is whether the plaintiff is the sole beneficiary under the will of Charles Myers, or whether the defendants as the children of the deceased brothers are entitled to share per stirpes in the claimed interest of their fathers in said estate as the brothers of Charles Myers, deceased.

The pertinent portions of the will of Charles Myers provide as follows:

"After the payment of such funeral expenses and debts, I give, devise and bequeath unto my beloved wife, Anna Myers, all personal property of any kind whatsoever, and all real estate of which I may die possessed of, to her and her heirs of her body forever.

"Provided that in the event that I shall die leaving a child or children of my body, then such child or children to take two-thirds of my property, both real and personal, and my said beloved wife Anna Myers to take one third of said property, both real and personal. But if I shall leave no children of my body, then my said beloved wife Anna Myers shall have the property both personal and real estate, that I die possed (possessed) of, to be hers in fee simple. * * * It is my desire that my beloved wife Anna Myers, in case there be no heirs of our bodies, make a will and bequeath the property

I leave her to my brothers and sisters, to be distributed equally amoung (among) thoes (those) living at the time of her death."

The county court does not have jurisdiction to construe a will except in an advisory capacity to the personal representative of the deceased. Gotchall v. Gotchall, 98 Neb. 730, 154 N. W. 243; In re Estate of Stieber, 139 Neb. 36, 296 N. W. 336. The proper forum in which to construe a will, to determine the title to real property devised therein, is the district court. Hahn v. Verret, 143 Neb. 820, 11 N. W. 2d 551; Hiatt v. Hiatt, 146 Neb. 652, 20 N. W. 2d 921. It is elementary also that the provisions of a will take effect and become operative at the time of the death of the testator. Smullin v. Wharton, 83 Neb. 328, 119 N. W. 773, 121 N. W. 441; Lacy v. Murdock, 147 Neb. 242, 22 N. W. 2d 713. It is also the rule in this state that in the construction of a will, the court will give effect to the intent of the testator, so far as it can be ascertained from the whole instrument if such intent is consistent with controlling rules of law. Lacy v. Murdock, *supra;* In re Estate of Zents, 148 Neb. 104, 26 N. W. 2d 793; Olson v. Lisco, 149 Neb. 314, 30 N. W. 2d 910.

In giving effect to the rule that the intent of the testator will be gleaned from the four corners of the will, it has been held that an absolute devise of real estate in one paragraph of a will which is followed by another paragraph devising a remainder interest, the two paragraphs will be construed together and effect given to the latter paragraph, even though it restricts the former. Merrill v. Pardun, 125 Neb. 701, 251 N. W. 834; Annable v. Ricedorff, 140 Neb. 93, 299 N. W. 373.

It is the contention of the plaintiff in the present case that the testator in devising and bequeathing his property to his wife in fee simple and, in a subsequent paragraph, expressing a desire that his wife make a will and bequeath the property he left her to his living brothers and sisters, created a trust of the property re-

maining at the death of his wife in favor of his brothers and sisters then living. It is elementary, of course, that the death of the trustee will not destroy a trust. The death of the wife, therefore, did not have the effect of destroying the trust, if a trust was in fact established.

It cannot be questioned that the testator intended his wife to have the use of all of his property in the event of no issue being born to them. She was not only to have the use of the income but, if necessary, the whole or any part of the principal for her support. The use of the expressions in the will "to her and her heirs of her body forever" and "to be hers in fee simple" imply a power of alienation. The defendants claim, however, that the use of these expressions and the use of the words "It is my desire that my beloved wife" make a will and bequeath the property that testator left her to his living brothers and sisters, that an intent that the wife have his property in unrestricted and unqualified fee simple is demonstrated, and, since she predeceased him, this constitutes a lapse. There being no residuary clause, it would then follow that the property would go to testator's heirs under the laws of descent and distribution. Unless the paragraph of the will expressing a "desire" that his wife make a will has some effect, the position of the defendants is undoubtedly correct. Consequently, the result hinges on the effect of the following language of the will: "It is my desire that my beloved wife * * * make a will and bequeath the property I leave her to my brothers and sisters, to be distributed equally amo*u*ng (among) tho*e*s (those) living at the time of her death."

The general rule in this state is that, in construing a will, where the will in one clause makes an apparently absolute bequest of property, but a subsequent clause makes a further bequest of the remainder after the death of the legatee taking under the first clause, the two clauses are to be construed together to ascertain the true character of the estate in fact granted by the

first clause; and in such case, contrary to the ancient rule at common law, the second clause is effective and operates to define and limit the estate granted by the first as a life estate with power of disposition, and the second is effective and operative to grant an estate in remainder in the unused, unexpended, or undisposed property granted for life by the first. Merrill v. Pardun, *supra;* In re Estate of Darr, 114 Neb. 116, 206 N. W. 2; Krause v. Krause, 113 Neb. 22, 201 N. W. 670; Annable v. Ricedorff, *supra.*

It is urged, however, that the use of the word "desire" indicates merely a suggestion or recommendation. Apt language was used in Merrill v. Pardun, *supra,* which states the correct rule: "The question as to when a trust may be implied where precatory expressions are employed is one which has caused considerable difficulty in the courts and is the subject of an extended annotation in 49 A. L. R. 10. In the case of In re Hochbrunn's Estate, 138 Wash. 415, 49 A. L. R. 7, the court said: 'Where a person makes a special request of another who is independent of him, it may be altogether ignored; but if in making a bequest to him capable of being fulfilled, and, in the same instance, specially requests that a portion of it be paid to another at a time sufficiently definite, the courteous language used makes it no less imperative than if he had commanded or ordered it to be paid. There is no technical meaning of the words "special request," or even the simple word "request," inconsistent with its being a common word that any one, whether layman or lawyer, may use in his will to express his intention of imposing an obligation.' " What has been here said applies as well to the word "desire" as to the word "request."

It is then argued that a "desire" that his wife make a will and bequeath the remaining property to his living brothers and sisters was not within the foregoing rule. In Knox v. Knox, 59 Wis. 172, 18 N. W. 155, 48 Am. R. 487, this point is adequately determined in the following

language: "Remembering, as was said by Chief Justice Marshall in the case of Smith v. Bell, 6 Pet., 75, that 'the first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law,' we have no hesitation in saying that it is clear to us from the language used by the testator that he did not intend to give his estate to his wife absolutely. Had such been his purpose, why did he take pains to point out so particularly what should be done with his estate when his wife died? If he intended that she should use it as she saw fit, and not limit her to the use of the income thereof, and simply intended to advise her as to what he thought she ought to do with what might be left of it at her death, why did he say that 'all the proceeds of my said property, real and personal, goods and chattels, hereby bequeathed' should be divided equally among his children? If we give any consideration to that part of the testator's language which follows the devise and bequest to his wife, in arriving at his intent, we are forced to conclude that he intended his request, as to its final distribution among his children, should bind his wife. It is clear that his will was that his children should take the property after the death of his wife. The language being clearly sufficient to show that such was his will, his request to his wife to so distribute his property must be construed as directory, and not simply as advisory."

In Deacon v. Cobson, 83 N. J. Eq. 122, 89 A. 1029, the court considered the following provision in a will: "'And in case any of the last aforesaid persons, except Mary B. Borden, should be deceased, leaving lawful issue at the time of the death of my daughter, I desire said deceased persons share to go to his, her or their child or children, their heirs or assigns, share and share alike.'" The court said: "The question for determination is whether the words 'wish', 'desire' and 'request,' as used

in that will and codicil, are operative to create a trust in favor of the persons named by testatrix.

"A rule of construction early adopted by the English court of chancery was to the effect that when, by will, property is given absolutely to a person, and the same person is by the testator 'recommended,' 'entreated,' 'requested' or 'wished' to dispose of that property in favor of another, the recommendation, request or wish will be held to be imperative and to create a trust, if the subject and objects of the trust are certain. That rule of construction was adopted by our court of last resort more than half a century ago, and has since been uniformly recognized by the courts of this state; it cannot be now questioned in this court (citing cases). It necessarily follows that the requests of testatrix in the will and codicil here in question must be given the same force as though the language adopted by testatrix had been, wherever the word 'request' occurs, it is my will and I do hereby order and direct." · See, also, Eddy v. Hartshorne, 34 N. J. Eq. 419.

In Schmucker's Estate v. Reel, 61 Mo. 592, the rule is stated as follows: "Courts of equity have frequently discussed the question as to the force of words or expressions of recommendation in wills in regard to the use to which the testators might desire persons to whom they had given legacies to put the same. The prevailing doctrine is, that no particular form of expression is requisite in order to create a binding and valid trust; and that words of recommendation, request, entreaty, wish or expectation, will impose a binding duty upon the devisee by way of trust, provided the testator has pointed out with sufficient clearness and certainty both the subject matter and the object of the trust." See, also, Noe v. Kern, 93 Mo. 367, 6 S. W. 239, 3 Am. S. R. 544.

In Colton v. Colton, 127 U. S. 300, 8 S. Ct. 1164, 32 L. Ed. 138, it is said: "And in such a case as the present, it would be but natural for the testator to suppose that a request, which, in its terms, implied no alternative,

addressed to his widow and principal legatee, would be understood and obeyed as strictly as though it were couched in the language of direction and command."

It is clear, we think, that testator intended to provide for the support of his wife to the extent that the estate would permit. In accomplishing that result it is clear that he intended to give her the property for life with right of disposition. It appears reasonable that he did not want any question raised as to his wife's power of disposition such as might have been raised had he given her an ordinary life estate with remainder to his brothers and sisters. Having confidence in his wife's regard for his wishes, he deemed the word "desire" was sufficiently mandatory to cause her to leave the remainder of his estate to his living brothers and sisters. It was the death of the wife before that of the testator which intervened to raise the issue. If the wife had survived the testator, the desire of the testator would probably have been voluntarily carried out. The fact that she predeceased him will not defeat the result he made clear in his will.

It is urged that the failure of testator to draw a new will after the death of his wife evidences an intent that his property was to go to his heirs at law rather than his surviving brothers and sisters. The only objects of his bounty expressed in his will were his wife and his surviving brothers and sisters. The death of the wife could not bring any new beneficiaries into the will, and we are obliged to assume that he so reasoned. If he had intended that new beneficiaries should take, a new will or codicil would have provided a simple method of doing it. We think the will as a whole, under the conditions existing at the time of the death of the testator, gives rise to a precatory trust in favor of the surviving brothers and sisters of the testator; and the plaintiff, being the sole survivor, the whole estate of the deceased vests in her.

It is contended that the order admitting the will to probate was void because of the disqualification of the acting county judge. It appears that the regularly elected

county judge disqualified himself. It is asserted that he was not in fact disqualified. No question is raised as to the regularity of the appointment and qualification of the acting county judge, other than the alleged qualification of the regularly elected county judge to act. Assuming that the elected county judge was qualified to act, no objection to the qualifications of the acting county judge was made in the probate proceeding and no appeal has been taken from the order of probate entered by him. The order is not subject to collateral attack by those who were parties to the probate proceeding. The acting county judge was clearly a de facto officer if the allegations of the appellants be true. As such, his acts are valid and binding upon the parties. Dredla v. Baache, 60 Neb. 655, 83 N. W. 916. There is no merit to the appellant's contention on this point.

It is also asserted that the elected county judge, who appears as the attorney for the appellee in the present case, is disqualified under the provisions of Article V, section 14, Constitution of Nebraska, providing: "No judge of the supreme or district courts shall act as attorney or counsellor at law in any manner whatsoever. No county judge shall practice law in any court in any matter arising in or growing out of any proceedings in his own court." This provision clearly means, as it applies to a county judge, that such judge may not appear as counsel in any matter in his own court or in any matter in which he would be disqualified if he had acted as county judge. By disqualifying as county judge he may not thereby remove himself from the prohibition of this constitutional provision in any matter in which he would otherwise be prohibited from engaging. It would be highly improper, we think, for a county judge to appear as counsel in the district court and argue for an interpretation of a will in accordance with an interpretation which he was required to make in his capacity as county judge, even though such latter interpretation is of limited effect. It is just as improper to disqualify

himself as county judge for any reason and participate in such a trial in the district court in view of the constitutional provision cited. When one seeks and is elected to the position of county judge, he is required to sever his relationship with all matters arising in or growing out of any proceedings in his own court. This being true, counsel for appellee was clearly disqualified from appearing as counsel for plaintiff in the district court and for such plaintiff as appellee in this court in the matter presently before us. The trial judge, however, took a different view of the matter and permitted the elected county judge to so act. While the trial court was in error in so doing, no prejudice to the rights of the defendants appears to have resulted. No basis therefore exists for depriving the plaintiff of the benefits of her judgment in the district court or in this court. If what is here said is not deemed an adequate correction of the violation, further inquiry in some other appropriate proceeding must afford the remedy.

AFFIRMED.

. YEAGER, J., participating on briefs.