RALPH W. SLOCUM, ADMINISTRATOR OF THE ESTATE OF MARY BOHUSLOV, DECEASED, APPELLANT, V. FRANK BOHUSLOV, APPELLEE.

82 N. W. 2d 39

Filed March 29, 1957. No. 34136.

*Robert A. Nelson* and *Richard H. Williams,* for appellant.

*John E. Mekota, for appellee.*

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellant seeks an adjudication that described personal property was owned by Mary Bohuslov at the time of her death; that appellant is entitled to the possession of it; that a trust be impressed on it in favor of appellant; and that an accounting be had of money used by appellee in the purchase of other designated property that is now occupied and used by him and of all income and amounts received by appellee from the property listed and described in this case as belonging to the deceased at the time of her death.

Frank Bohuslov, Sr., a resident of Lancaster County, died testate October 6, 1915. His heirs were Mary Bohuslov, his widow; Frank Bohuslov and Emil Bohuslov, his sons; and Christina Bohuslov, his daughter. The will of the deceased was admitted to probate and his estate was administered by proceedings had in the county court of Lancaster County. These proceedings terminated February 7, 1917. The deceased, by his will, gave all his property to his widow for her use and benefit during her life and the remainder equally to his three children. The children of the deceased were re-

spectively 21 years, 19 years, and 12 years of age at the time of the death of their father.

Mary Bohuslov, a resident of Lancaster County, died intestate August 4, 1953. Her children, Frank Bohuslov, Emil Bohuslov, and Christina Kraus, whose maiden name was Christina Bohuslov, were adjudged January 13, 1954, to be her heirs by the county court in which proceedings are pending for the administration of her estate. Appellant is the duly appointed and qualified representative of the estate of Mary Bohuslov, deceased.

Frank Bohuslov, Sr., owned the north half of Section 31, Township 9 North, Range 5 East of the 6th P. M., Lancaster County, Nebraska. He and his family were living on the land when he died. His widow and three children continued to do so and by their joint efforts operated the farm and carried on the activities appropriate to the land except Emil Bohuslov left and was at Sargent, Nebraska, during the months of December 1916 and January 1917; at Huron, South Dakota, during the months of September and October 1918; and at Crete, Nebraska, during the months of November and December 1918 and January and part of February 1919. They were industrious, diligent, and frugal. Mary Bohuslov, hereafter sometimes designated deceased, with the assistance of her daughter, did the housework and they did additional work on and about the farm. The income realized was put in one fund. There was no compensation as such paid to any of them. What they received was substantially limited to the necessities of life. The mother was in charge. She handled the finances, made all purchases, and paid all expenses. There was a mortgage of $2,700 on the farm. The indebtedness secured by it was paid and the mortgage discharged probably during the year 1917. This situation continued until March of 1920. About March 20, 1920, Emil, without warning to his older brother, departed, took the family automobile, and disposed of it. The other members of the family were left without means of trans-

portation. Emil went to California but this was not known at that time. He says the first time he communicated with his mother after he left in March 1920 was in April 1921. Appellee says Emil was not heard from until 1925. In any event he severed his residence on the home place and had nothing thereafter to do about or with any of its activities or concerns except he made three visits there, one in 1925, one in the summer of 1928, and the third and last in 1940. The mother continued to live at the same place for 13 years after that but he did not see or visit her, neither did he attend her funeral, though he asserts that their relationship was normal and affectionate.

The deceased in 1920 desired to be relieved of looking after matters concerning the property, finances, and operation of the farm and home and secured appellee to take over these responsibilities. She had handled these matters since the death of her husband. She did banking business at the City National Bank of Crete and at Denton as long as there was a bank there. She did the buying of necessary things and she paid the bills. In short, she took over where her husband left off and carried on until appellee, at her request, relieved her in the year 1920. He thereafter had charge of and conducted all the transactions and performed all things necessary or incidental to the affairs in which his mother or he was interested. He did, however, fully inform and consult with his mother about each matter before he acted concerning it through the years thereafter until her death.

Christina Bohuslov was married to Joseph J. Kraus in September 1925. She and her husband moved on a farm a few miles from the place where her mother and appellee resided. She was frequently at the home place. She had a normal relationship with her mother. She sold to appellee and she and her husband on March 21, 1942, conveyed to appellee by deed all her title and interest in the land owned by her father at the time of

his death, and she sold and conveyed to appellee on that date all her interest in the personal property belonging to her father at the time of his death or belonging to his estate. The consideration paid her by appellee for the property she sold and conveyed to him was $3,200. There is no indication in the record that she was not satisfied with that transaction. She was not consulted about and she had no part in the proceedings to administer the estate of her mother commenced by her brother Emil or in this litigation.

In the period of about March 1925 through April 1927 Emil received from appellee $3,416. The first remittance to Emil was $600 in March or April 1925. He could not say while a witness who signed the check representing that remittance but it was probably appellee as he claims since he had charge of all finances and had been making all payments since 1920. Emil on this account executed and delivered a note, dated January 2, 1928, payable to appellee or order, 12 months after date, at The City National Bank of Crete, with interest at 4 percent per annum, for the sum of $3,416. This note or any part of it has not been paid to appellee. Emil insisted that appellee buy his interest in his father's estate. He demanded $5,500 for it. If appellee did this he had to borrow a part of the amount. He consulted the City National Bank of Crete of which he was a customer. The bank refused to make a loan for that purpose because it considered the amount required out of reason when compared to the value of the property. The mother of appellee urged him to pay Emil the $5,500. "She said to give that to him. She told me, 'You get this money and give it to him, and he is going to leave us alone. He will be paid off.'" The mother asked appellee to approach the Crete State Bank and seek a loan. He did and he secured a loan from that bank and paid the $5,500 for which he took from Emil and his wife a deed dated November 18, 1931, for all his title and interest in the land owned by his father

at the time of his death, and a bill of sale dated November 18, 1931, from Emil for all his interest in the personal property. Emil received and has retained the consideration paid by appellee.

Appellee purchased the south half of the southeast quarter of Section 25, Township 9 North, Range 4 East of the 6th P. M., Seward County, Nebraska. The deed, dated February 17, 1920, was made to him as grantee. The deceased knew when this land was to be sold and she talked with appellee concerning it. She advised him to go over and buy it. He acted upon her advice and bought the land for $5,600. There was no objection or complaint from anyone at that time because the title to it was put in the name of appellee. He borrowed the money from the City National Bank of Crete and the State Bank of Denton to pay the purchase price. The former was given a first mortgage on the land and the note to the Denton bank was not secured. The notes were paid from the income realized from the farming operations carried on by appellee of the land owned by his father at the time of his death and the 80 acres of land purchased by appellee. The two places were used as a unit and the income from each was placed in one fund. Appellee conveyed the 80 acres of land bought by him to his mother by deed which was acknowledged November 22, 1928. It was promptly recorded in the public records of Seward County. The deceased conveyed the 80 acres of land to appellee by warranty deed dated December 5, 1929. It was recorded without delay in the proper public records. The deceased had full knowledge and realization of all the facts concerning this land and the transactions involving it. She participated in and approved what was done and the final result was exactly what she desired.

In the period from October 1942 through December 1952 appellee bought 47 United States bonds. They were issued and continued, as suggested and requested by the deceased, with Frank Bohuslov or Mary Bohuslov as

payees. The deceased had full knowledge as to all facts concerning them and she approved and acquiesced therein. The facts were her choice and as she wanted them. She saw many of the bonds and all the checks received in payment of interest on them. She made and kept her personal record of the bonds and knew exactly how many there were. There was a deposit account in the City National Bank of Crete in the names of Frank Bohuslov or Mary Bohuslov at the time of her death.

The district court found generally for appellee and against appellant; that appellant had no interest in and was not entitled to the possession of any of the property involved in this case except certificate No. 5578 representing 24 shares of stock of Nebraska-Iowa Packing Company in which appellee disclaimed any interest; and that a trust should not be impressed upon the property in favor of appellant. A judgment was rendered in harmony with the findings and the case was dismissed. A motion by appellant for a new trial was denied and he contests the correctness of the judgment by this appeal.

The essence of the claims of appellant is that the personal property involved herein, and described in detail in a copy of an inventory attached to and made a part of his amended petition, represents and resulted from the income of the life estate of Mary Bohuslov in the property given to her by the will of her deceased husband; that title to the property was owned by Mary Bohuslov at the time of her death; that it constitutes assets of her estate although possession and the legal title thereto may be held by appellee; that appellee has continued in the possession of and enjoyed all the income from all the personal property described herein as aforesaid since the death of his mother; and that deceased, an uneducated person without knowledge of business affairs and only slight knowledge of the English language, was the victim of fraud and undue influence perpetrated by appellee, and he thereby took title to the property in-

volved in his name and because thereof a trust should be impressed thereon in favor of appellant. Appellee denies the claims of appellant, pleads the statute of limitations, and asserts that he is rightfully in the possession and is the owner of the property by absolute title.

Appellant makes no claims herein for recovery of any personal property received by Mary Bohuslov from the estate of her deceased husband by virtue of the will of the deceased or for the value thereof. This is not important because appellee became the owner of all the property owned by his deceased father, except the life estate given to his mother therein, when he purchased and received conveyances therefor from his brother and sister.

The testator did not direct that his estate be held in trust for his widow, Mary Bohuslov. He gave her the full, unrestricted possession, use, enjoyment, and benefit thereof during the term of her natural life. She did not take a life estate in the property of the testator as trustee. She, as life tenant, was entitled to and owned by absolute title everything in the nature of income, profit, and gain realized or accrued from the property during her tenancy. The testator did not express or indicate a contrary intent by the language of his will. In Ellis v. Flannigan, 279 Ill. 93, 116 N. E. 618, the Illinois court said: "The devise of a life estate in property carries with it the unrestricted use of the income, and property purchased with the income is not subject to the terms of the will in the absence of some provision to that effect." In the opinion this language appears: "The testator declared his purpose to be to secure a sure and permanent support for his wife during her life. In carrying out this purpose he gave to her a life estate in all his property * * *. Being the owner of the life estate she was entitled to all the income from the property and was under no obligation to account for it to anyone. * * * The gift of the life estate carried with it the unrestricted use of the income * * *. If she

was able from the income of her husband's estate, either with or without her own earnings, to acquire other property, such property was not subject to the provisions of his will but was subject to her own disposition." See, also, In re Estate of Wecker, 123 Neb. 504, 243 N. W. 642; Milner v. Brokhausen, 153 Iowa 560, 133 N. W. 1068; Whitehill v. Whitehill, 211 Iowa 475, 233 N. W. 748.

The deposit account of $3,070.40 in the City National Bank of Crete was in the names of Frank Bohuslov or Mary Bohuslov at the time of the death of the latter. The deposit became the sole and absolute property of appellee, the surviving co-owner, at the time of the death of the other co-owner on August 4, 1953. The relevant part of section 8-167, R. R. S. 1943, is: "When a deposit in any bank * * * is made in the name of two * * * persons, * * * payable to either or to their survivor, * * * such deposit * * * may be * * * paid to either of said persons or to the survivor * * *." The statute was intended for the protection of banks but it also establishes the property rights of the persons described therein unless the contrary appears from the terms of the deposit. If a deposit is made in a bank payable to two persons, either expressly as joint tenants with right of survivorship or without such qualifying words, upon the death of one of the co-owners of the deposit it is payable to the surviving co-owner of the deposit. McConnell v. McCook Nat. Bank, 142 Neb. 451, 6 N. W. 2d 599; Rose v. Kahler, 151 Neb. 532, 38 N. W. 2d 391; Scriven v. Scriven, 153 Neb. 655, 45 N. W. 2d 760; DeForge v. Patrick, 162 Neb. 568, 76 N. W. 2d 733.

Appellee, upon the death of his mother, became the sole owner of the United States savings bonds payable to and issued in the names of Frank Bohuslov or Mary Bohuslov and hereinbefore described. A United States savings bond is a contract between the federal government and the purchaser and Treasury Department regulations governing such bonds are incorporated into such

contract by reference and are beyond reach of the state law to modify or destroy. If such bonds are issued and registered in the names of two persons as co-owners, the rights of a surviving co-owner arise solely from the contract. The surviving co-owner of the bonds takes title thereto by reason of Treasury Department regulations incorporated in the contract between the government and the purchaser. 31 U. S. C. A., § 757c, p. 622; § 315.45, 31 C. F. R. (1949 Ed.); Rohn v. Kelley, 156 Neb. 463, 56 N. W. 2d 711; United States v. Dauphin Deposit Trust Co., 50 F. Supp. 73; In re Bartlett, 71 F. Supp. 514; Annotations, 168 A. L. R. 245, 173 A. L. R. 550.

The property involved herein was in the exclusive possession and control of appellee on the land operated by him, except the bonds and the deposit in the bank, when appellant made a list of it and filed it in the estate of the deceased as an inventory of the property of her estate. The petition of appellant upon which this case was tried concedes that title to the property is in appellee except the bonds were jointly in the names of appellee and the deceased. There is no proof that any of this property was on the land or in existence when appellee, at the importunity of his mother in the year 1920, took charge of the land and its operation, activities, and transactions incidental thereto.

His manner of operation was identical with what it would have been if he had owned all the land he used and no other person was interested therein or in his actions or transactions except he did consult with his mother with whom he lived and for whom he cared. The income from his operations and transactions was deposited for many years in his individual deposit account. He alone withdrew funds from it. He bought, sold, planted, and harvested as his judgment dictated. He acted in his name as an individual and a principal. He reported the property as his for assessment and taxation and he paid the taxes thereon. He made income tax returns in which all the income was reported as the income

of appellee. The deceased was listed therein and treated as a dependent. Appellee paid all expenses that accrued including those for the care, support, and comfort of his mother. The record is convincing that she knew and understood what was done by appellee; that she realized fully the effect and result thereof; and that she consented to, approved, and acquiesced therein. The record seems clear that appellee did exactly what his mother intended and desired. The essence of what transpired between the deceased and appellee was that the property should be his subject to his obligation to furnish his mother, at his expense, all her requirements for care and support throughout the remainder of her life. The evidence is that appellee gave his mother every attention, care, support, and comfort that he had the opportunity and capacity to do and that he never failed to respond to her desires and wants.

He lived on the home place with his mother from soon after the death of his father in 1915 until her death in 1953. He did substantially all the work required to carry on the farming operations except for some assistance for limited times in the busiest seasons. He labored from 12 to 13 hours, and many times longer, during the 6 work days of the week and a half-day on Sunday. In addition to his many farming duties he did much of the housework, including cooking. He was outside the State of Nebraska but once when he went into the State of Iowa for a limited time. He was never farther away from the home place in Nebraska than a trip to Omaha and one to Banner County. He never had a vacation of any kind or duration. He was about 60 years of age when his mother died and he was unmarried. His sole diversion, recreation, or entertainment was a visit to the motion picture theatre in Crete sometimes as much as twice a month at an admission expense initially of 25 cents. Later the admission charge was advanced to 50 cents and he looked upon this as an extravagance. He was

thrifty and frugal to a fault. He bought his last suit and a lightweight overcoat in 1929 and has bought none since. The suit was made in Cincinnati, Ohio. Years after its purchase it was returned to the maker to be repaired and overhauled. He repaired an automobile which had been abandoned as impossible of further use when his brother disposed of the Dodge car, the family automobile, in 1920 and appellee used the repaired car continuously for a period of 5 years thereafter as his only means of transportation. His present means of transportation is a 1948 Ford truck. He never had a corn-picker or a milking machine but he milked as many as 12 to 25 cows by hand. Appellee received no compensation as such for the labor and services he performed and rendered during the period of more than a third of a century between the death of his father and the death of his mother. There is uncontested evidence in the record that the reasonable value of these was more than the probable value of the property involved.

Appellant says that a trust should be impressed upon the property, the subject matter of this litigation, because the deceased was uneducated and had little knowledge of the English language, and appellee exerted fraud and undue influence upon her. Appellant asserts that appellee usurped the management of her business affairs; fraudulently took title in his name to the Seward County land and the personal property other than the bonds and the bank deposit; and fraudulently took title jointly in the names of Frank Bohuslov or Mary Bohuslov to the bonds and the deposit. These charges are unsupported by evidence. The deceased was not an uneducated person. She spoke the English language and the Czech language with equal ease and fluency. She took and read several publications including the Lincoln Daily Star, Nebraska Farmer, Capper publications, Journal Stockman, and others printed in English. She subscribed for and read one paper in the Czech language published in Chicago. She intelligently discussed

with others matters she had read in these publications. There is evidence of a bank official that when her husband came to the bank to transact business, the deceased was invariably with him and she generally transacted the business with which she and her husband were concerned; that she was a very competent woman; and that she was capable of transacting any ordinary business. There is much other evidence to the same effect concerning the qualifications and capabilities of the deceased to transact business.

The rule is well established and has been frequently applied as in Box v. Box, 146 Neb. 826, 21 N. W. 2d 868: "If a party obtains the legal title to property by virtue of a confidential relation, under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, hold and enjoy the benefits, out of such circumstances or relations, a court of equity will raise a trust by construction and fasten it upon the conscience of the offending party and convert him into a trustee of the legal title." See, also, Peterson v. Massey, 155 Neb. 829, 53 N. W. 2d 912. However, the principle which is decisive of this case is stated in Peterson v. Massey, *supra*, in this manner: "The burden of establishing a constructive trust is always upon the person who bases his rights thereon and he must do so by evidence that is clear, satisfactory, and convincing." Appellant has not satisfied the burden thus imposed. The charge of fraud is wholly unsupported. The only element of undue influence concerning which it may be said there is any evidence is opportunity to exert undue influence because appellee lived with his mother. There is a failure of proof as to each of the three remaining elements of undue influence. In re Estate of Bainbridge, 151 Neb. 142, 36 N. W. 2d 625. There is a failure of proof that appellee had any disposition or desire to improperly influence his mother, to act unjustly toward her, or that he did so.

The judgment should be and it is affirmed.

AFFIRMED.