IRENE PAGE ET AL., APPELLANTS, V. LLOYD BUCHFINCK
ET AL., APPELLEES. NEDRA RAE HIGGINS ET AL.,
APPELLANTS, V. LLOYD BUCHFINCK ET AL., APPELLEES.
IRENE PAGE ET AL., APPELLANTS, V. LLOYD BUCHFINCK
ET AL., APPELLEES. ELLSWORTH A. CLYDE ET AL.,
APPELLANTS, V. LLOYD BUCHFINCK ET AL., APPELLEES.
ALVINA AVERY ET AL., APPELLANTS, V. LLOYD BUCHFINCK
ET AL., APPELLEES.

275 N. W. 2d 826

Filed February 27, 1979. Nos. 42022, 42023, 42024, 42054, 42055.

Mingus & Mingus and James A. Beltzer of Luebs, Dowding, Beltzer & Leininger, for appellants.

Edward D. Hotz of Hotz, Kluver & Kizer, H. Alan Curtiss of Reddish, Curtiss & Moravek, and William P. Mueller of McGinley, Lane, Mueller, Shanahan & McQuillan, for appellees.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

This is an appeal from the District Court for Box Butte County, Nebraska, after five separate cases were consolidated for trial. The parties stipulated that the five cases would be consolidated for argument and consideration upon appeal to this court.

Plaintiffs are appealing the judgment entered by the District Court construing the will of Alven Evans as it affected personal property in his estate. Alven Evans died testate May 7, 1940. He was survived by his wife, Elizabeth K. Evans, and his five children: Darwin Evans, Alta Dykes, Zena Clyde, Emmerson Evans, and Tyndall Evans. Two of the children, Alta Dykes and Zena Clyde, died in 1946 and 1965 respectively, predeceasing their mother, Elizabeth K.

Evans, who died August 6, 1972. The plaintiffs-appellants in this case are the five children of Zena Clyde, and the daughter of Alta Dykes.

Elizabeth K. Evans died testate in 1972. Her will left all of her property to her children that survived her. Two of her children, Emmerson Evans and Tyndall Evans, died in 1973. Both Emmerson and Tyndall Evans left heirs who are defendants in this action. Lloyd Buchfinck, the Administrator with the Will Annexed of Elizabeth Evans' estate, and LeRoy Evans, who was initially the administrator of her estate, are also named defendants. Darwin Evans, as the only living child of Alven and Elizabeth Evans, is also a defendant in this case.

Subsequent to Elizabeth Evans' death, the individual plaintiffs brought separate actions, requesting the court to construe Alven Evans' will to find that the personal property held by him at his death passed to Elizabeth Evans for life only, and that Alven Evans' will created a trust by precatory words upon all of his personal property. Elizabeth and Emmerson Evans were named as executors in Alven Evans' will. The executors petitioned the county court of Grant County, Nebraska, for letters testamentary, for a hearing on Alven Evans' will, and also requested notice of the probate of the will be given to all persons interested in the estate. Alven Evans' will was admitted to probate on June 10, 1940. An allowance of final account and decree of distribution was filed by the county court in the Alven Evans estate on October 7, 1944. The county court found that under Alven Evans' will, Elizabeth Evans took all of his personal property "subject to the terms, conditions and limitations of said last will and testament, and by reason thereof the said Elizabeth K. Evans is the sole owner of same, subject only to the terms, conditions and limitations of said last will and testament * * *."

Defendants raised as a defense, in their answer to

the plaintiffs' petition, that plaintiffs' privies were parties to the probate proceedings of Alven Evans' estate and thus are bound by the decree of distribution because they failed to appeal the final decree assigning all of Alven Evans' personal property to Elizabeth Evans.

The defendants contend that county courts, in probate matters, are courts of general jurisdiction. Judgments rendered in distribution of estates by the county courts, after proper notice, are final, unless set aside by appeal. The county court of Grant County entered a decree of distribution and inheritance tax in the Alven Evans estate assigning all of his personal property to Elizabeth Evans as the sole owner subject to the conditions in Alven Evans' will.

Sections 30-1601 and 30-1602, R. R. S. 1943, provide that in all probate matters appeals shall be allowed from any final decree of the county court to the District Court by any person against whom such decree may be made or who may be affected thereby, within 30 days after the decision complained of is made. This court, in the case of In re Estate of Bednar, 151 Neb. 242, 37 N. W. 2d 195 (1949), held that sections 30-1601 and 30-1602, R. S. 1943, required all appeals in probate to be taken within 30 days after the decision complained of.

In the case of Father Flanagan's Boys' Home v. Graybill, 178 Neb. 79, 132 N. W. 2d 304 (1964), we stated: "It is contended that the county court of Custer County has original jurisdiction to construe the will of the deceased and that the district court has jurisdiction only on appeal. By a long line of cases this court has held to the contrary. The rule is: The probate court has jurisdiction to construe wills when necessary for the benefit of the executor in carrying out the terms of the will. It has no jurisdiction to construe wills to determine the rights of devisees or legatees as between themselves, or between the executor and persons claiming adversely

to the estate. Such latter jurisdiction is in the district court. Merrill v. Pardun, 125 Neb. 701, 251 N. W. 834; DeWitt v. Sampson, 158 Neb. 653, 64 N. W. 2d 352; Lutcavish v. Eaton, 166 Neb. 268, 89 N. W. 2d 44; Brown v. Applegate, 166 Neb. 432, 89 N. W. 2d 233.''

In Merrill v. Pardun, 125 Neb. 701, 251 N. W. 834 (1933), this court also stated: "[W]here under the terms of the will an executor can assign the property without a construction of the will and does not request a construction, the court has no authority to bind the heirs or legatees by any construction.'' The executors of Alven Evans' estate did not ask for a construction of his will nor did the county court ever give personal notice to plaintiffs that Alven Evans' will was going to be construed. Thus, this action was properly brought before the District Court and this court upon appeal.

Alven Evans' will reads in pertinent part as follows: "*Item Second*: I give and devise to my beloved wife, Elizabeth K. Evans, all of the *real estate* which I may be seized and possessed of at the time of my death, for and *during her natural life time,* subject however to the terms, conditions, and limitations hereinafter set forth, with the remainder of the title to said real estate over, at her death, to my five children and heirs at law, to wit: Zena Clyde, Tyndall Evans, Emerson (sic) Evans, Darwin Evans, and Alta Dykes, which I hereby devise to them, share and share alike, subject only to said life estate of my said beloved wife, Elizabeth K. Evans; * * *

"*Item Third*: I hereby give and bequeath to my said beloved wife, Elizabeth K. Evans, all of my money, credits, livestock and *personal property* of every kind and description, *subject* however to the following *conditions* to-wit: that is to say, she shall *assume* to pay and shall pay promptly the interest upon the indebtedness that I shall owe at my death * * *. This bequest shall be and is subject also to the

other conditions and limitations in this will hereinafter set forth. * * *

"*Item Fourth*:   It is my desire and I hereby will and direct as a condition of the bequest contained in 'Item Third' of this will that my beloved wife shall carry on a ranching business upon said real estate, as nearly as is practicable in the same manner and custom and according to the same plan that I have followed in carrying on the ranching business in my life time; * * *

"The proceeds from said business shall be disbursed in the order following:

1-   She shall first pay the land and personal taxes upon said property and business.

2-   She shall next pay the matured interest and installments of principal due on said Federal Land Bank Mortgage; and upon that due upon said Production Credit Association.

3-   She shall next pay all of the proper expenses incurred in the ranching business.

4-   She shall then pay all necessary repairs and improvements to be made on said ranch in order to carry on said business successfully.

5-   The *balance* of said proceeds, if any, not necessarily used in building up and conducting said ranching business, shall be placed to the *credit of my beloved wife.*

"I further advise and direct that my said wife shall employ as the active manager of said ranching business my trusted son, Emerson [sic] Evans, and shall confer and consult with him in all things (not waiving her control and deciding voice in all matters), provided however that in case she at any time shall by reason of age, ill health, weakness, or inability for any reason become incompetent or unable to conduct said ranching business, then and in that case my said son, Emerson [sic] Evans, shall by competent authority be appointed as trustee for her use and benefit, to carry on said business in all re-

spects in accordance with the plan here set forth, to the end that my said beloved wife may have all of her rights and property preserved to her, as contemplated by the terms of this will. * * *

"I make this my last will and testamony [sic] (as shown herein) upon the *hope, desire and belief* that my beloved wife will at her death leave all of her property to our said five children share and share alike.

"*Item Fifth*: All the rest, residue and remainder of my property, if there be any, I give, bequeath and devise unto my said five children, share and share alike as tenants in common. In case any of my children shall die in my life time, leaving issue or descendents [sic], I direct that his or her share shall not lapse but shall be paid to said descendents [sic] in equal proportion." (Emphasis supplied.)

The District Court in this action found that:

"1. The personal property inventoried in the Alven Evans estate was bequeathed to Elizabeth K. Evans in 'Item Third' of his Will, in fee simple, subject to her personal duty to comply with the directions in 'Item Fourth' of his Will as to the management and operation of the Evans Ranch. Elizabeth K. Evans performed those obligations and the property inventoried in her estate was owned by her in fee simple at her death, and passed pursuant to the dispositive provisions in her will.

"2. The precatory words in the Alven Evans will refer to *her* property and Alven Evans had no power to dispose of such property.

"IT IS THEREFORE ORDERED, CONSIDERED AND ADJUDGED that Plaintiffs have no interest in the personal property inventoried in the estate of Alven Evans at the time of his death; and that Elizabeth K. Evans owned the property inventoried in her estate in fee simple at her death.

"IT IS FURTHER ORDERED that the petitions of

Plaintiffs are dismissed. All costs are taxed to Plaintiffs.''

The cardinal rule in construing a will is to ascertain and effectuate the intention of the testator if such intention is not contrary to the law. Overbeck v. Estate of Bock, 198 Neb. 121, 251 N. W. 2d 872 (1977). While the rule is simple, its practical application is more difficult, as evidenced by the instant case.

The true intent of Alven Evans, with regard to his personal property, is somewhat difficult to ascertain from the conflicting and ambiguous language he used in his will. The testator very explicitly gave Elizabeth Evans only a life estate in his real property with the remainder, at her death, going to their five children and heirs. It can be concluded from the life estate given to Elizabeth Evans in the real property that the drafter of Alven Evans' will knew how to create a life estate and divide the remainder. If Alven Evans had intended to leave his wife only a life estate in his personal property, it would seem likely that he could and undoubtedly would have used the same or similar language he employed in creating the life estate in his real property. The fact he did not is, in our opinion, strong evidence that he did not intend to do so, but on the contrary intended to give her the property in fee simple.

''Item Fourth'' of Alven Evans' will concludes with the following statement:

''I make this my last will and testamony [sic] (as shown herein) upon the *hope, desire and belief* that my beloved wife will at her death leave all of her property to our said five children share and share alike.'' (Emphasis supplied.) Plaintiffs claim these words created a precatory trust on the testator's property for their benefit.

The District Court found that the precatory words in Alven Evans' will, ''hope, desire and belief,'' referred to the personal property in Alven Evans' es-

tate which it, in effect, found had vested in Elizabeth Evans in fee simple absolute upon her death and over which Alven Evans had no power of disposal.

The term "precatory words" is defined in Black's Law Dictionary 1340 (4th Ed. Revised, 1968) to be "[w]ords of entreaty, request, desire, wish, or recommendation, employed in wills, as distinguished from direct and imperative terms."

It has been held by this court that precatory words may operate to create a trust on a bequest, although the bequest is given in "fee simple," as in Tucker v. Myers' Estate, 151 Neb. 359, 37 N. W. 2d 585 (1949); or "absolutely" as in Merrill v. Pardun, 125 Neb. 701, 251 N. W. 834 (1933); or "forever" as in Annable v. Ricedorff, 140 Neb. 93, 299 N. W. 373 (1941).

1 Restatement of Trusts 2d, § 25, p. 69, Comment b, contains an excellent summary of the rules concerning precatory words and circumstances which are considered in determining the testator's intent. Comment b reads in part as follows:

"b. *Precatory words.* On the one hand, the settlor may manifest an intention to create a trust; on the other hand, his manifestation of intention may amount merely to a suggestion or wish that the transferee should use or dispose of the property in a certain manner, leaving it to the transferee to follow the suggestion or comply with the wish only if the transferee desires to do so. *No trust is created if the settlor manifests an intention to impose merely a moral obligation.* In determining the intention of the settlor the following circumstances among others are considered: (1) the imperative or precatory character of the words used; (2) the definiteness of indefiniteness of the property; (3) the definiteness or indefiniteness of the beneficiaries or of the extent of their interests; (4) the relations between the parties; (5) the financial situation of the parties; (6) the motives which may reasonably be supposed to have influenced the settlor in making the

disposition; (7) whether the result reached by construing the transaction as a trust or not a trust would be such as a person in the situation of the settlor would naturally desire to produce." (Emphasis supplied.)

The modern view has also been stated in Scott on Trusts, § 25.2 (3d Ed., 1967), as follows:

"[W]here the question is one of ascertaining the intention of the testator, any hard and fast rule is inappropriate. This change of view is in accordance with the general trend of modern law in favor of doing away with artificial rules as to the presumption of intention, and in favor of recognizing that a will should be construed in accordance with the language used in each particular case as interpreted in the light of all the circumstances."

Thus, the primary concern is the determination of the intention of the testator in using precatory words. Although trusts were held to arise based upon the use of precatory words in Tucker v. Myers' Estate, *supra*, Merrill v. Pardun, *supra*, and Annable v. Ricedorff, *supra,* this court is not obligated to find the existence of a trust because of the use of such words if a contrary intention on the part of the testator is evidenced.

Alven Evans' intention as to his personal property is evidenced by the fact that he bequeathed his wife all of his personal property, subject to a number of conditions and limitations as further set out in his will. Elizabeth Evans was required to pay outstanding debts and future property taxes. In this connection, 1 Restatement of the Law of Property, § 37, Comment j, p. 102, states that:

"A devise which charges the devisee thereof personally with the duty of paying the testator's debts, or of paying a legacy, or of performing any other onerous act is significant as indicating an intent to create in the devisee an estate in fee simple absolute." See, also, 28 Am. Jur. 2d, Estates, § 20, p. 97.

The authorities cited above condition the creation

of a fee simple absolute on the devisee being personally liable for the testator's debts. Alven Evans' will, in the first condition after the bequest of personal property to Elizabeth Evans, in "Item Third" states that "she shall *assume* to pay and shall pay promptly the interest upon the indebtedness that I shall owe at my death to the Alliance Production Credit Association which shall be secured by a chattel mortgage upon and against my livestock. * * *." (Emphasis supplied.)

Alven Evans' will stated that the balance of the proceeds from the ranching business, after payment of the business debts and expenses and not used in the business, were to be "placed to the credit" of Elizabeth Evans. We interpret this provision as evidencing an intention on the part of Alven Evans to give his wife the net income from the ranching business to do with as she pleased. We also believe that the use of the word "desire," when coupled together with the words "hope" and "belief" indicate and suggest that the testator did not intend to impose a mandatory trust upon the personal property he had previously bequeathed. Although the word "desire" has been found to create a precatory trust in some instances, we believe the directory nature of the use of the word "desire" is somewhat restricted or diminished in this case by the addition of the words "hope" and "belief." Some courts have found that no trust was created by the use of the precatory words, "hope" and "belief". In Taylor's Estate, 28 Pa. Dist. 778 (1919), the court held that no trust was created where the testator's will gave his residuary estate to his wife "with the *desire and belief* that she will execute a will giving and bequeathing whatever property she may have received from me" to the testator's brothers and sisters. (Emphasis supplied.) Likewise, no trust was created in the case of Van Duyne v. Van Duyne, 14 N. J. Eq. 397 (1862), where in his will a testator devised a farm to his son and

daughter *"hoping and believing* they will do justice hereafter to my grandson \* \* \*."  (Emphasis supplied.)  No conclusive rule can be adopted merely on the basis of which precatory words are used, but we believe in this case the use of the words "hope" and "belief" mitigates and diminishes the force of any intention expressed by the word "desire" that a trust be created.  We believe the testator's choice of words in this case does not indicate a direction or command that a trust be created; but only indicates a suggestion of a result he would like to see accomplished.

Finally, the clause in Alven Evans' will which contains the precatory words also refers to "her" property.  Obviously, Alven Evans had no power to dispose of any property owned by Elizabeth Evans; and in the absence of a definitely described trust corpus, the trust must fail.  As we stated in Smullin v. Wharton, 73 Neb. 667, 103 N. W. 288 (1905):  "If there is such uncertainty that it cannot be known who is to take as beneficiary the trust will fail, or *if the property which is attempted to be put in trust is so uncertain that it cannot be separated or distinguished from the individual property of the trustee the trust will be void for uncertainty.*  No trust will be created where the property to be the subject of the trust is left uncertain."  (Emphasis supplied.)  1 Restatement of Trusts 2d, § 25, p. 70, in its illustration 4, gives the following example:  "4.  A devises and bequeaths all his property to B, his wife, 'desiring her to give all her estate at her death to my relations.'  Since the expression of desire applies not only to A's property, but also to B's property as to which A had no power to create a trust, he does not presumably intend to create a trust as to his property.  In the absence of other evidence, B is entitled beneficially to the property and does not take it in trust."

Although the evidence in the record is sketchy, at best, that Elizabeth Evans owned property other

than what she received from Alven Evan's estate, there is evidence in the record that Elizabeth Evans had received social security payments for many years. Furthermore, there is no question that as life tenant of the ranch, Elizabeth Evans was entitled to any income from the real estate. Slocum v. Bohuslov, 164 Neb. 156, 82 N. W. 2d 39 (1957). The record reveals that Alven Evans raised crops, particularly hay, upon the land in which he gave his wife a life estate, and directed her to continue the operation of the ranch. By stipulation of the parties, she did so, and complied with all conditions he specified in his will. The Tucker, Merrill and Annable cases, cited above, are not controlling here because it is clear from a reading of those cases that the testator was clearly referring only to his own property in the creation of the trust. Alven Evans also provided in his will that the proceeds from the business, not used in the business, were to be "placed to the credit" of Elizabeth Evans.

Elizabeth Evans undoubtedly owned property of her own at the date of her death. Even if we were to conclude that, by use of the precatory words in his will, Alven Evans intended to create a precatory trust upon his property, we believe the existence of a precatory trust must fail under the facts of this case because of the ambiguity and lack of certainty as to the property upon which the trust was intended to operate, under the rules set forth above.

Plaintiffs further contend, however, that even if the precatory language in the last paragraph of "Item Fourth" should fail, the Evans ranch and personal property and accumulations thereof would pass to his five children, share and share alike, as tenants in common, by virtue of "Item Fifth" of Alven Evans' will, arguing that he would not have inserted that residuary clause in the will if there were not to be a remainder, and hence testator only intended that his wife, Elizabeth K. Evans, was to take

a life estate in his personal property. In support of this argument he cites Merrill v. Pardun, *supra*; and also the case of In re Estate of Curtis, 123 Neb. 97, 242 N. W. 257 (1932), where this court stated the rule that where an irreconcilable repugnancy exists between two provisions of a will, the latter will prevail over the earlier, unless from a consideration of the entire will a contrary intention is evinced. Even assuming that the foregoing rule is viable, and may be considered in appropriate situations, we do not believe it is applicable under the facts of the present case, as we believe that a consideration of the entire will of Alven Evans indicates a contrary intention. We do not agree that the fact of the presence of a residuary in Alven Evans' will is inconsistent in any manner whatsoever with the absolute bequest to his wife of his personal property in fee simple contained in "Item Fourth" of his will. One purpose of the use of a residuary clause in a will is to avoid the possibility that lapsed or ineffectual bequests would pass by intestacy where it is clear that the testator intended to die testate. As a general rule, lapsed or ineffectual legacies of personal property will pass under a general residuary clause, and will not pass intestate to the testator's heirs. 80 Am. Jur. 2d, Wills, § 1688, p. 742. In the instant case, had Elizabeth K. Evans been unable for some reason to receive or hold the fee simple title of the personal property bequeathed to her in Alven Evans' will, then, and in that event, the "safety valve" of the residuary clause would have divided his personal property among his children. It does not follow at all that the mere presence of the residuary clause mandates the conclusion that Elizabeth K. Evans is incapable of receiving a fee simple title to the personal property in question. We conclude that appellant's claim to this effect is likewise without merit.

For all of the foregoing reasons we affirm the findings of the District Court that the plaintiffs had no

interest in the personal property in Alven Evans' estate at the time of his death, and that upon Elizabeth Evans' death she owned the property inventoried in her estate in fee simple. The judgment of the District Court must be affirmed.

AFFIRMED.